JOSEPH A. THOMPSON AND ANOTHER, EXECUTORS, *vs.* CYRUS WHITE AND OTHERS.

*D*, desiring to obtain *B's* endorsement of his paper, in 1862 executed to him a note for $5,000, payable to *B* or bearer in five years with interest—to which was appended an agreement signed by *D* that the note should be secured by a mortgage and both held by *M*, who should deliver them to *B* when he had endorsed paper for *D* to the amount of $5,000. This paper was at once left with *M*. In 1863 *D* executed the mortgage stipulated for, which he procured to be recorded, and left with *M* to hold for the benefit of *B* or any other person who might be entitled to the benefit of it. The defeasance of the mortgage stated the condition of the note, that *B* should endorse the paper of *D* to the amount of $5,000, and provided for the deed being void if the paper so endorsed was paid. *B* did not know until some time after that this mortgage had been executed. Within a few months after its execution *B* endorsed two

notes for *D*, one of $1,500 and one of $1,600, on which *D* got loans of those amounts from *T*. These notes ran till 1867, the interest having been paid annually, when *D* wished to borrow enough more of *T*, upon *B's* endorsement, to make $5,000. *T*, *D*, and *B* met. The interest was reckoned on the two notes to date, a new note was made for $5,000 signed by *D* and *B* as makers, the latter as surety, the old notes were cancelled, and the balance of cash paid by *T* to *D*. *T* took this note and had taken the others in the belief that the mortgage given by *D* would secure them. The respondents had severally acquired interests in the mortgaged property after the execution of the mortgage. The mortgage, with the original $5,000 note secured by it, were in 1870 delivered by *M* to *D*, who kept them until 1878, when after a controversy had arisen between the present parties, he delivered them to the attorney for the petitioners. The petitioners were executors of *T*, and sought to foreclose the mortgage in question as security for the $5,000 note taken by *T*. Since the giving of that note both *D* and *B* had become bankrupt. Held—

1. That the delivery of the note and mortgage by *D* to the petitioners could not give them a validity which they had not had before.
2. That as by the terms of the agreement of 1862 under which the note and mortgage were made and which was referred to in the defeasance, they were not to be delivered until *B* had endorsed paper for *D* to the amount of $5,000, they could not take effect, as against the respondents, until such endorsements had been made.
3. That the mortgage did not, as against the respondents, operate as security for the notes of less amount than $5,000 which *B* had endorsed.
4. That the signing of the $5,000 note by *B* as joint maker with *D*, was not the liability which by the terms of the agreement *B* was to assume and the mortgage was to secure—and though this might be sufficient between the original parties it was not so against the respondents, as to whom the condition of the mortgage could not be changed.
5. That this $5,000 note could not be regarded as in part a renewal of the two notes of $1,500 and $1,600 which were included in it, both because in the absence of any finding to that effect it could not be presumed that the parties intended such a renewal, and because it did not appear that *B* had ever been notified as endorser of the non-payment of those notes; while if he had been discharged he could not, by voluntarily assuming the liability after such discharge, give the mortgage an effect against the respondents which it otherwise would not have had.

BILL for a foreclosure, brought to the Superior Court in Tolland County. The petitioners brought the suit as executors of Samuel Thompson. The following facts were found by a committee:—

In 1862 Lebbeus Bissell, of Rockville, in this state, agreed to indorse paper for Albert Dart, also of Rockville, to an amount not exceeding $5,000 at any one time for the term of five years. For the purpose of securing Bissell Dart executed an instrument in writing as follows:—

" Rockville, August 28th, 1862.

" Five years from date I promise to pay Lebbeus Bissell or bearer five thousand dollars, value received, with interest annually.                              ALBERT DART."

" The condition of this obligation is—This bond or note shall be held in trust by Moses B. Bull, and shall be secured by a mortgage deed and made part and parcel of the same. When Lebbeus Bissell has endorsed to the amount of five thousand dollars for the term of five years from the date of this note, then it shall be delivered to Lebbeus Bissell or the holder of such endorsed paper. Rockville, August 28th, 1862.                              ALBERT DART."

On March 12th, 1863, Dart executed the mortgage of that date which the petitioners now seek to foreclose. That mortgage was recorded on the day of its date. Bissell did not know of its existence at the time; and it does not appear that he had any knowledge of it before June 27th, 1864. Its defeasance was as follows:—" The condition of this deed is such that whereas the said grantor has executed a certain bond or obligation, dated August 28th, 1862, payable to said grantee or assigns, conditioned that the said grantee endorse the notes or paper of the said grantor for the term of five years from the date of said bond, to an amount not exceeding at any one time the sum of five thousand dollars; now therefore, if said grantor shall well and truly pay said notes or paper so endorsed according to the provisions of said bond, and save the said Bissell harmless therefrom, then this deed shall be void, otherwise to remain in full force and effect."

 On the 22d of April, 1863, Dart borrowed of Samuel Thompson, the petitioners' testator, $1,500, and gave his note therefor indorsed by Bissell. On the 27th of June, 1864, he borrowed of him $1,600 more on a note indorsed in like manner. How these notes were written or when they fell due was not shown. About May 1st, 1867, he desired to borrow enough more of Thompson to make the sum of $5,000. On that day Thompson, Dart and Bissell met. The

interest on the $1,500 note had been paid to April 22d, 1867, and on the $1,600 note to June 27th, 1866. Bissell was never notified as indorser of the non-payment of either of these notes. At that time there were no other notes outstanding on which Bissell had been liable as indorser. The parties however treated these notes as though he was still liable on them, computed the interest thereon to that date, and the difference between the amount and $5,000 Thompson at once loaned to Dart. Thereupon the two notes were given up and destroyed. Dart and Bissell executed and delivered to Thompson a note as follows:—

> "Rockville, May 1st, 1867.
> "Three years from date, I, Albert Dart as principal, and Lebbeus Bissell as surety, jointly and severally promise to pay Samuel Thompson or order five thousand dollars, with interest annually. ALBERT DART,
> LEBBEUS BISSELL."

The interest on that note was paid to May 1st, 1869.

At the time this note was given there was conversation about the security. A note for $5,000 in proper form to be endorsed by Bissell was drawn, but Thompson preferred to have the joint and several note of Dart as principal and Bissell as surety, instead of a note of Dart indorsed by Bissell. Thompson inquired if the taking of the new note in the form of principal and surety as finally signed would impair the security. Some one, it did not appear who, but in the presence and hearing of all three, replied that the security would not be affected. Thereupon the $5,000 note was made and balance lent as above stated. Thompson at all times understood that he had mortgage security for his advances to Dart. It did not appear that at this time he had examined the mortgage in dispute, or knew exactly what the security was if he had any. But he did rely to some extent upon the mortgage security as well as upon the names of Dart and Bissell.

The instrument dated August 28th, 1862, was delivered to Moses B. Bull, then the town clerk of Vernon. In 1870 Dart

received it with other papers from Bull, but did not know that he had it until 1872. He retained it in his possession, but notified Thompson that he knew where it was. In 1878, after the present controversy had arisen, he delivered it to the attorney for the petitioners, but neither it nor the mortgage was ever delivered to Bissell or Thompson.

In October, 1863, Dart mortgaged to one Thrall certain real estate, including the premises, subject to the mortgage to Bissell, for $5,000. In 1864 he mortgaged a part of the premises with other property to the Willimantic Savings Institute, covenanting that all the property mortgaged was free from encumbrance. That mortgage by subsequent transfers became vested in the Merchants' Loan and Trust Company, one of the respondents. On the 10th of January, 1868, Dart mortgaged the premises free from encumbrance to the Rockville Savings Bank. This mortgage is now owned by the respondent White. In April and December following the same premises by successive mortgages were mortgaged to White. A detailed statement of the interests of the several respondents is not necessary.

In 1870 Bissell went into bankruptcy under the United States bankrupt act and afterwards obtained a discharge from all his debts. Dart went into bankruptcy in 1871, but did not obtain a discharge. He has ever since been insolvent.

None of the money lent by Thompson to Dart has been repaid to him or his executors. He died June 22d, 1875. The respondent White is in possession of the disputed premises, which are of the value of $2,500.

Upon these facts the case was reserved for the advice of this court.

*M. R. West* and *D. Marcy,* for the petitioners.

1. The mortgage does not purport to secure the bond of August 28th, 1862, but in express terms secures the notes of Dart that should be endorsed by Bissell to an amount not exceeding $5,000. It is predicated upon the liabilities arising by reason of certain notes made by Dart and endorsed by Bissell pursuant to the provisions of the bond, which provi-

sions are recited in the mortgage, and are that "the grantee endorse the notes of the grantor for the term of five years from the date of said bond to an amount not exceeding at any one time the sum of five thousand dollars," and it is upon the payment of the notes so endorsed, and the saving of Bissell harmless therefrom by the grantor, that the deed is to be void. Here, then, without further knowledge of the bond, is certain definite information of the character of the liabilities to be secured. There is also a definite limit of the liability to be incurred, namely, $5,000. There also is given such definite information as to put a person upon inquiry and as points out a precise course by which he may ascertain at any time the exact amount of such liability; and this mortgage, without other proof of the provisions of the bond, constitutes a valid incumbrance upon the land therein described for liabilities incurred within its provisions.

2. The mortgage constituted valid security for the payment of such of Dart's notes as were endorsed by Bissell pursuant to its provisions as well as security for the indemnity of Bissell for such endorsements. In *Potter* v. *Holden*, 31 Conn., 385, DUTTON, J., says, "Where creditors are not concerned, we think parties may in general make such contracts, not in violation of law, as they think proper. A mortgagor may secure an endorser for his own personal liability only, or he may secure the notes which he has endorsed. It is frequently difficult to tell which of these was intended, but there can be no doubt that the parties can do whichever they choose." And it may be added that they can do both. In this mortgage the language of the defeasance is, "Now, therefore, if said grantor shall well and truly *pay said notes or paper* so endorsed according to the provisions of said bond, and save the said Bissell harmless therefrom, then this deed shall be void." In *Jones* v. *Quinnipiack Bank*, 29 Conn., 25, language upon its face of similar import was held to constitute a mortgage for indemnity only, but in that case no fact apparent upon the face of the mortgage or found in connection with its execution and delivery or otherwise, showed that the parties ever intended that it should

operate in any other manner. In this case the mortgage refers to the bond or obligation, and the bond, upon its face, shows that it was to be secured by a mortgage, and might be delivered to the holder of the endorsed paper, and so operate as security therefor. The fact is found that the mortgage was delivered to Bull for the benefit of Bissell, *and any person who might be entitled to the benefit of the same.* These facts show that it was clearly the intention of the parties to the mortgage that it should operate as security for the notes, and it should be so construed, such construction being clearly consistent with the language used in the defeasance, and, being so construed, the holders of the notes are entitled to the benefit of the security. But if it should be held that the mortgage was given merely to indemnify Bissell for his endorsements, still inasmuch as the legal title to the mortgage, ever since its execution, has been and now is vested in Bissell, and he, by reason of bankruptcy, has been discharged from liability on all of these notes, and Dart is insolvent, the holders of the notes are in equity entitled to have such security made available for their payment. *Homer* v. *Savings Bank*, 7 Conn., 478; *New London Bank* v. *Lee*, 11 id., 112; *Thrall* v. *De Forest*, 20 id., 427; *Stearns* v. *Bates*, 46 id., 306.

3. The note of May 1st, 1867, for $5,000, signed by Dart as principal and Bissell as surety, was made by them and taken by Thompson under the understanding and belief of all the parties that it was secured by the mortgage, and in equity it should be held to be so secured; but if not, then inasmuch as the $5,000 note has never been paid, the $1,500 and $1,600 notes which were taken up and included in the $5,000 note, under that understanding and belief, will not be deemed to have been paid, but for the purpose of security for the money loaned on them, and for the purposes of this mortgage, the same liability will be regarded as still existing in respect to these two notes as existed at the time they were so surrendered, notwithstanding such surrender. No change in the form of the liability originally incurred by the endorsements, whether by the renewal of the notes, by giving others with like endorsements, or by the substitution of other

notes to which the original endorser is a party as maker, will affect the mortgage security of the endorser so long as the liability of the endorser is preserved. *Bolles* v. *Chauncey*, 8 Conn., 392; *Pond* v. *Clarke*, 14 id., 334; *Boswell* v. *Goodwin*, 31 id., 74; *Pomroy* v. *Rice*, 16 Pick., 22. The $1,500 and $1,600 notes, as made by Dart and endorsed by Bissell, were made and endorsed strictly within the provisions of the mortgage, and were intended by Dart to be, and were taken by Thompson as, secured by the mortgage, and the mortgage became a valid incumbrance for the indemnity of Bissell for his endorsement of them. The indebtedness to Thompson as the holder of these two notes has never been paid, and the liability of Bissell as the endorser of these notes has been continued in the $5,000 note as a part of the consideration thereof, and no new credit has been given by Thompson or by Bissell on account of so much of the $5,000 note as was made up by the renewal of the two notes, and so in any event the mortgage must be held as a valid incumbrance for these two notes.

4. The facts found show that Bissell was liable as endorser on the two notes at the time of their surrender— either that the notes were not then overdue, or that he had waived notice at the time of his endorsement. He had agreed to endorse for Dart to an amount not exceeding at any one time $5,000. He had mortgage security for these endorsements and also providing for his endorsement for the term of five years. The interest had been paid regularly each year on these notes. Dart, Thompson and Bissell all treated the notes as though Bissell was then liable thereon. Bissell, by the $5,000 note, agreed to pay them. From the understanding found by the committee to have been had by the parties at the time, it is evident that no new credit was intended to be given in respect to the loan secured by the two notes. It is a presumption of reason sustained by the common experience of mankind that a man will not pay a debt which is not due, nor acknowledge the existence of a debt for which he is not liable. *Breed* v. *Hillhouse*, 7 Conn., 523; *Hayes* v. *Werner*, 45 id., 246.

5. But if the notes were overdue at the time of the substitution, still the contract implied by the endorsement was such that the endorser might be held liable without the usual conditions precedent having been performed by the holder, if the endorser expressly waived the performance of those conditions, and a subsequent express promise to pay the notes made with a knowledge on the part of the endorser of the failure of such performance would be a waiver. *Breed* v. *Hillhouse*, 7 Conn., 523; *Hayes* v. *Werner*, 45 id., 246; *Hopkins* v. *Liswell*, 12 Mass., 52; *Phillips* v. *Thompson*, 2 Johns. Ch., 418. The fact that notice of the non-payment of these two notes was not given must have been known to Bissell, for he was the party to be notified, and, having full knowledge of this want of notice, he expressly promised to pay the notes and therefore waived notice. "While it is everywhere said that the endorser's liability is conditioned upon due demand and notice, it should be remembered that the condition is not a strict and absolute condition precedent, as conditions in contracts construed by the common law. The obligation of the endorser is regarded rather as voidable by non-fulfillment of these conditions than as actually avoided. The right to waive or to insist upon the performance of the conditions precedent implied in the contract of endorsement is a right personal to the endorser, and his action in the premises is conclusive upon all parties interested." 2 Daniel on Neg. Instruments, §§ 1147, 1150, 1152; *Bickerdike* v. *Bollman*, 1 T. R., 405. This principle is analogous to the one that prevails in respect to taking advantage of infancy, the statute of limitations, the statute of frauds, and the statute in relation to usury, to avoid contracts, except that in one case the contract is avoided by the non-performance of the conditions precedent unless waived by the endorser, and in the other cases the contracts are binding unless avoided by the party sought to be held by the contract. *Cahill* v. *Bigelow*, 18 Pick., 369.

*A. P. Hyde* and *W. W. Hyde*, for the respondents.

CARPENTER, J. The petitioners claim a decree upon the

familiar principle that security to a surety inures in equity to the benefit of the creditor. Our first inquiry is, therefore, whether Bissell, the surety, had any security which he could enforce against subsequent encumbrancers. Of course it is not necessary to inquire what rights he may have as against Dart.

The condition in the mortgage under consideration is as follows:—"The condition of this deed is such, that whereas the said grantor has executed a certain bond or obligation, dated August 28th, 1862, payable to the said grantee or assigns, conditioned that the said grantee endorse the notes or paper of the said grantor for the term of five years from the date of said bond, to an amount not exceeding at any one time the sum of five thousand dollars; now therefore, if the said grantor shall well and truly pay said notes or paper so endorsed according to the provisions of said bond and save the said Bissell harmless therefrom, then this deed shall be void."

The instrument thus described is not evidence of any indebtedness from Dart to Bissell. The writing was not intended as evidence of debt, but was intended as collateral security for a contingent liability. Now this writing, such as it was, was not by its terms to be delivered to Bissell until he 'had indorsed to the full amount of $5,000. He never did so indorse, and the writing was never in fact delivered to him, or to any holder of the indorsed paper. It remained in the hands of Bull and of Dart until three years after Thompson's death, which occurred in 1875, when, after a controversy had arisen between Dart and White, Dart delivered it to the attorney for Thompson's executors. Up to that time it was inoperative—so much dead paper. We do not think that such a delivery imparted any vitality to it.

But if it may be regarded as a good delivery they took nothing by it, because by its terms they were not entitled to it.

It is said however that the mortgage was not intended to secure that writing, but the notes or paper indorsed by Bissell. That is true with this qualification, that it was intended only to secure notes and paper indorsed according to the

terms of that writing, and by those terms the full amount of $5,000 must be indorsed before the writing could take effect, as we cannot presume that the writing was to take effect until delivered.

But it may be said that Bissell, in respect to the note signed by him, was a mere surety, and that that was in substance what the parties contemplated. That might do as between the original parties, but it will not do as between the mortgagee and subsequent incumbrancers. That would be substituting one debt, entirely different in its nature and character, for another; an absolute indebtedness for a contingent liability; and that is not allowable. *Bramhall* v. *Flood*, 41 Conn., 68; *Merrills* v. *Swift*, 18 Conn., 257.

It is further contended that the two notes were indorsed by Bissell pursuant to the arrangement, that the transaction of May 1st, 1867, was not a payment but a renewal of them, and that, notwithstanding the amount was less than was contemplated, the mortgage should in equity be regarded as securing those notes.

It looks very much as though Dart intended to induce Bissell to indorse for the full amount by providing that he should have no security before he had so indorsed. If that be so we cannot hold that to be within the mortgage which the parties have carefully excluded. But however this may be, there are two other fatal objections to this claim. First, there is no evidence that Bissell was liable on those notes when the note for $5,000 was signed by him. One note had run over four years and the other over three. It is found that Bissell had never been notified of the non-payment of either of these notes, and it does not appear that they were not then due. The burden was on the petitioners to show a then existing liability, and they have not shown it. If the indorser had been discharged by the laches of the holder the security was gone, and no waiver by the indorser would revive it. Second, it is not found, and the transaction as reported does not show, that the notes were renewed; on the contrary it shows that the parties did not intend to continue that form of liability. Presumptively the notes were overdue, and the

indorser discharged; the interest was computed on them, the indebtedness was largely increased, the old notes were destroyed and a new note taken for the increased amount, which Bissell signed as maker. In the absence of any finding to that effect we cannot presume that the parties intended by this a renewal of the old notes.

It is unnecessary to consider the other questions in the case.

Judgment is advised for the respondents.

In this opinion the other judges concurred.