### HELLER ALLER CO. *v.* RIES.

1. Contracts—Implied Contracts—Support and Services.
   A contract will not be implied to pay for care and services rendered without expectation of recompense by one member to another member of the family, who was incompetent to make a valid contract.[1]

[1] As to implication of agreement to pay for services rendered by relative or member of household, see note in 11 L. R. A. (N. S.) 873.

2. FRAUDULENT CONVEYANCES—HUSBAND AND WIFE—GUARDIAN
   AND WARD.

   In a suit by a creditor in aid of an execution upon real estate,
   the defendants sustained the burden of proving their good
   faith in transferring real property from the defendant hus-
   band to his wife, by evidence that he had collected funds as
   guardian of the wife's mother, an incompetent, applied the
   money to the payment of a mortgage on his property, and,
   after the death of the incompetent, settled and paid the in-
   debtedness to his wife, who was the sole heir of his ward, by
   transferring to her the real property in question, which, after
   deducting the homestead interest, was of value fairly to sat-
   isfy the obligation.

Appeal from Lenawee; O'Mealey, J. Submitted Jan-
uary 3, 1911. (Docket No. 10.) Decided February 1,
1911.

Bill in aid of execution by the Heller Aller Company
against Adam Ries and Ann Martha Ries. From a de-
cree dismissing the bill, complainant appeals. Affirmed.

*Files & Paxson* and *Smith, Baldwin & Alexander*,
for complainant.

*George W. Ayers* and *J. N. Sampson*, for defendants.

BLAIR, J. On February 1, 1893, Adam Ries and
Augustus Ries gave to complainant their promissory note
for $300 with interest at 6 per cent., payable on or before
June 1st following. Suit was brought upon this note in
the court of common pleas in Fulton county, Ohio, and
judgment obtained there on said note April 29, 1907.
Suit was brought upon this judgment in the circuit court
for the county of Lenawee, and judgment obtained for
$868 damages and $75.95 costs, March 31, 1908. Execu-
tion was issued upon this judgment, and, for the want of
personal property, levied upon the E. ½ of the N. W. ¼ of
section 27, township 8 S., range 4 E., of Ogden, Lenawee
county, Mich. This land had, after the note was given,
been conveyed by the defendant Adam Ries and Ann

Martha Ries, his wife, to James L. Drake, and James L. Drake and wife deeded it back to Adam Ries and Ann Martha Ries, as husband and wife, for an expressed consideration of $1, on June 22, 1901. On April 3, 1909, defendant Adam Ries deeded the same premises to the other defendant, his wife, Ann Martha Ries, for a claimed consideration of $1. On April 9, 1909, complainant filed its bill of complaint in aid of execution. The proof was taken in open court, and the court made a finding that the parents of the defendant Ann Martha Ries lived with defendants in their home for some years, and the father died there, and that defendant Adam Ries presented a claim against the father's estate for his care and support and the expense of his sickness and burial, which was allowed and paid out of the father's estate; that said father was a soldier, and after his decease the defendant Adam Ries was appointed guardian of the soldier's widow, who was incompetent, and as such guardian received from the government of the United States back pension, $1,555.40, and later another amount of pension money, $1,105, making a tatal of $2,660.40; that the widow lived with defendants, and was cared for by them several years, which support was not furnished under any agreement that the defendants were to be compensated therefor, nor did it appear that defendant Adam Ries, guardian, ever intended to charge his ward or expected compensation, or that after her death he made any claim against her estate, or that he ever regarded the money received from the government as compensation for the care and support of his ward, nor that he ever accounted to his ward, while living, or to her estate, for these moneys, or that he ever rendered any account to the probate court of his guardianship, or that he was ever discharged as guardian; and that he did not account to the defendant Ann Martha Ries, as the only heir of his ward, for such moneys, which money he used in his business affairs and in paying a mortgage on the land in question, " until he accounted to the defendant Ann Martha Ries by paying her the

amount of said indebtedness in the transaction of conveying his said farm to the defendants Drake and taking a conveyance of the title of said land back to himself and his said wife as tenants of the entirety.". And the court found that defendant Adam Ries, as guardian of his wife's mother, was indebted to his ward in the sum of $2,660 at the date of the Drake deed and the conveyances back to him and wife.

From the decree dismissing its bill of complaint, complainant appeals to this court. Defendant Ann Ries' father died in 1879, and his widow continued living with defendants until her death in 1896. The mother of defendant Ann Reis received nothing from her husband's estate, and we are satisfied that all services rendered to her were gratuitous until her pension was allowed, at least. In the words of defendant Ann, "we had to take care of her for nothing until after she got her pension." The services having been rendered to the mother as a member of the family, without expectation of recompense therefor, and she being incapable of making a contract, no contract could be implied to pay for the services. *Mason* v. *Dunbar*, 43 Mich. 407 (5 N. W. 432, 38 Am. Rep. 201); *Decker* v. *Kanous' Estate*, 129 Mich. 146 (88 N. W. 398); *In re Colburn's Estate*, 153 Mich. 206 (116 N. W. 986, 126 Am. St. Rep. 479).

Defendant Adam Ries having been appointed guardian of his mother-in-law's person and estate, as such guardian collected the pension money, receiving a check for $1,555.40, July 28, 1892, which he used to discharge a mortgage of $1,800 on the west 40 of the lands in question, in accordance, as he testified, with the advice of the judge of probate and an attorney. His wife also advised such use of the money. There was no agreement that the money should be repaid to defendant Ann, but Adam testified that he considered that the money belonged to her:

"I asked Mr. Robbins, the probate judge—I asked him about her estate. He said the best thing to do was to put

that money into a piece of land, or if you have got any mortgage on your place pay it, and save that money for the old lady's support, and I did so; and on the third day of August I paid up this mortgage. Four years after that my wife's mother died, and my wife, being the only child and heir, the money came to her. In 1901 I was sick a long time, and my wife asked me, 'You had better do something to secure me on the property,' and we made a joint deed. This $1,555.40 check was for the back pay that she got. This pension money had been running for twelve years back; she was getting twelve dollars a month. * * * I did not pay the balance of the mortgage the same day that I applied the pension check. I had made payments beforehand, and this check settled it all up and the mortgage was discharged. * * *

"*Q.* I think you said, Mr. Ries, on your direct examination, that this money that came from your wife's parents' estate you considered belonged to her?

"*A.* Yes, sir.

"*Q.* Notwithstanding the work that was done there taking care of the old people?

"*A.* It belongs to her.

"*Q.* Who did the principal part of the work?

"*A.* Well, I and my woman.

"*Q.* And whatever came in that way you and your wife considered it belonged to her?

"*A.* Yes, sir.

"*Q.* And that was the reason this joint deed was made, to take care of that?

"*A.* Yes, sir. * * * I made a deed because I was sick, and she told me to do something; and we made the deed. When I was in debt, my wife said, 'You had better go and pay off the mortgage with this pension check,' so the mortgage was paid off with that money; I had never paid the money back to her; at the time the deed was made I still owed it to her."

Defendant Ann testified:

"*Q.* How did you understand, when that money was put in there, what you received from your father and mother—how did you understand that that would be, that the land would be owned between you and your husband?

"*A.* Yes; what is his is mine, and what is mine is his.

"*Q.* And did you understand it was necessary to take any note or mortgage to secure you for that money?

"*A.* No, sir.

"*Q.* You thought if he was taken away, the property would come to you?

"*A.* Yes, sir.

"*Q.* And when you learned that you ought to have some security for that money, then the deed was made—this joint deed?

"*A.* Yes; the joint deed was made.

"*Q.* Did you make the suggestion to him?

"*A.* Yes; I spoke first."

At the time the pension money was applied on the mortgage it belonged to the mother, and she became subrogated to the rights of the mortgagee to the extent of such payment and the interest to accrue thereon.  The daughter had no legal interest in the fund whatever, could make no disposition of it by gift or otherwise, and her consent to its payment on the mortgage added nothing to her husband's rights, and detracted nothing from hers.  At her mother's death four years later, she for the first time acquired an interest in this fund as money in the guardian's hands belonging to her, subject only to the guardian's legal charges.  It was not money turned over to her husband by her to use in his affairs, but it was money turned over to the guardian by the Federal government to be used for a specific purpose.  The fact that the guardian chanced to be her husband in nowise changed the legal relations of the two.  As sole heir at law, she might have insisted upon an accounting by the guardian, and if the balance of the pension money with the interest on the fund was sufficient to care for the ward for four years, she would have been entitled to a lien for the $1,555.40 upon the premises. The fact that she took no steps until 1901 with reference to the matter is consistent with her testimony and his that she supposed that she owned an equal interest in the property with him, and that in case of his death the property would be hers.  At all events, her mother's estate belonged to her as a matter of law; she never gave this money to her husband.  Neither did she do anything to cut off her right to recover it, and it is not perceived how the equities of complainant are superior to hers.  She did as much to

earn this farm as her husband did. She worked in the fields with him and took care of the home and her insane mother. She bore and reared 11 children, and her money, for which her husband was accountable to her as a matter of law, discharged the large incumbrance upon their home. Whether defendant Adam intended to charge for the care and maintenance of the ward or not after he obtained the pension money, we think that, adding to the $2,660.40 of pension money the interest and the homestead exemption of $1,500, and deducting a reasonable amount for the guardian's charges, there would remain an adequate consideration for the joint deed. We think the defendants sustained the burden of proof under the statute, and the decree is affirmed.

OSTRANDER, C. J., and HOOKER, McALVAY, and STONE, JJ., concurred.