## THE FIRST TAXING DISTRICT *vs.* THE NATIONAL SURETY COMPANY (GILES GREGORY ET ALS.).

Third Judicial District, Bridgeport, April Term, 1922.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

Subrogation is an equitable doctrine, borrowed from the civil law, for the furtherance of justice regardless of form or mere technicality. Its aim is to prevent the person who is primarily liable for a debt which is paid by another not a volunteer, from enriching himself at the expense of the latter, and thus place the ultimate burden upon the party who ought in equity and good conscience to discharge it. This result is accomplished, where no superior equities exist, by creating a relation somewhat analogous to that of a constructive trust, between the creditor who has received his money and the person who has paid it, and investing the latter with all the creditor's legal rights in respect to the debt, which, for the purpose of doing justice, is treated as still subsisting.

In the present case an administrator, who was also a tax collector of the plaintiff district, misappropriated the money of the estate .and when called on to settle his final administration account did so by embezzling an equal amount of the funds of the district in his hands as collector, and paid this over to the creditors and distributees of the estate, who received it in good faith and without any knowledge that it belonged to the plaintiff. *Held* that the surety upon the bond of the administrator was liable to the creditors and distributees of the estate for the administrator's embezzlement of its funds; that equity would keep this liability alive for the benefit of the plaintiff, whose money had been used to pay it; and that the plaintiff was entitled to be subrogated to the rights of · the creditors and distributees of the estate as against the surety, who would otherwise be unjustly enriched at the plaintiff's expense.

Argued April 13th—decided August 4th, 1922.

SUIT for subrogation to the rights of the estate of Henry Green and the creditors and beneficiaries of said estate, against the defendant the National Surety Company under its bond, and for an adjudication that the Surety Company be required to pay plaintiff the amount of the bond which was discharged by the

misappropriation of the funds of the plaintiff, brought to the Superior Court in Fairfield County where a demurrer to the substituted complaint was sustained (*Banks, J.*), and judgment was afterward rendered for the defendants (*Marvin, J.*), from which the plaintiff appealed. *Error and cause remanded.*

*Jesse T. Dunbar* and *Edward J. Quinlan*, for the appellant (plaintiff).

*John H. Light*, with whom was *Freeman Light*, for the appellee (defendant the National Surety Company).

WHEELER, C. J. The substituted complaint alleges, in substance, these facts: Chester S. Selleck was treasurer of the plaintiff and also administrator of the estate of Henry Green, late of Norwalk, and that on the date of his appointment as such administrator, the defendant the National Surety Company executed a bond in the penal sum of $70,000, in which bond Selleck was principal and the Surety Company surety, and that this was duly filed in the Court of Probate for the district of Norwalk; that the condition of the bond was that if Selleck "shall faithfully discharge the duties of his said trust [as said administrator] according to law, then this obligation is to become void, otherwise to remain in full force and virtue"; and between the date of his appointment and the date of his final account as administrator, Selleck, in violation of the duties of his trust, wrongfully misappropriated funds of the estate of Henry Green to the amount of $13,558. On June 17th, 1916, Selleck filed his final account as such administrator, showing that all the debts of the estate and the expenses of administration had been paid, and that there was available for distribution $62, 702.14, whereas there was only $49,144.14, and in

addition there were valid claims of creditors which had not been paid. On July 17th, 1916, the Court of Probate ordered Selleck to pay over the said amount available for distribution as recited in the final account, and Selleck, to make good his defalcation as administrator, wrongfully took the funds of plaintiff which were in his hands as treasurer of plaintiff, to the amount of $13,558, and deposited it to the credit of the estate, and thereafter paid from this amount $2,108.10 to the creditors of this estate and the balance to the distributees of the estate. The complaint further alleges that this action is brought for the special benefit of plaintiff whose funds were used by Selleck to make good his defalcations as administrator, and that in equity the plaintiff should be subrogated to the rights of the creditors and distributees of the estate against the defendant on the bond, by reason of Selleck's breach of it. The plaintiff claims: by way of equitable relief (1) that the plaintiff be subrogated to the rights of the estate of Henry Green and the creditors and beneficiaries of said estate against defendant Surety Company under its bond; (2) that the defendant Surety Company be required to pay plaintiff the amount of the obligation under the bond of the Surety Company which was discharged by the misappropriation of the funds of the plaintiff. The trial court sustained the demurrer, holding, as the plaintiff interprets the demurrer, that there was a misjoinder of causes of action and parties and that the plaintiff is not entitled to the relief of subrogation. The trial court followed in its decision two earlier decisions of demurrers which it esteemed to be the law of the case and hence controlled its decision. In its brief plaintiff limits its appeal to the single question whether the plaintiff is entitled to the relief by way of subrogation, and correctly concludes that if this question is decided in the affirmative

the question of misjoinder must fall. We shall confine our consideration of the appeal to this single point.

Subrogation is a doctrine which equity borrowed from the civil law and administers so as to secure justice without regard to form or mere technicality. Story's Eq. Juris. (Vol. 2, 14th Ed.) § 706, says: "It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter." It is a legal fiction through which one who, not as a volunteer or in his own wrong and where there are no outstanding and superior equities, pays the debt of another, is substituted to all the rights and remedies of the other, and the debt is treated in equity as still existing for his benefit. Article by Mr. Creason, in 54 C. L. J. 42. This doctrine is not static, but so elastic as to take within its remedy cases of first instance which fairly fall within it and secure its primary object by compelling payment of a debt by him who ought in equity and good conscience to pay it. Equity seeks by this action, as it does by that for reimbursement, contribution and exoneration, to prevent the unearned enrichment of one party at the expense of another, "by creating a relation somewhat analogous to a constructive trust, in favor of the subrogee, or party making the payment, in all legal rights held by the creditor." 5 Pomeroy, Eq. Rem. (2d Ed.) § 2343.

We have applied this doctrine as the occasion has offered. We held in *Atwood* v. *Vincent,* 17 Conn. 575, 583, that the surety is entitled to the benefit of all the securities of which his principal can take advantage; and in *Thompson* v. *White,* 48 Conn. 509, 518, that security given to a surety inures in equity to the benefit of the creditor. While in *Regan* v. *New York & N. E. R. Co.,* 60 Conn. 124, 142, 22 Atl. 503, in applying the

doctrine to a new set of circumstances, we said: "Where one person discharges an obligation which *primarily* rests upon another, he shall be subrogated to the place of the injured party or the creditor, in respect to the party who is *primarily* liable." Other instances in which we have approved of the doctrine are: *Jones* v. *Quinnipiac Bank,* 29 Conn. 25, 42; *Sisk* v. *Rapuano,* 94 Conn. 294, 302, 108 Atl. 858; *Hudson Trust Co.* v. *Cushman,* 93 Conn. 119, 105 Atl. 344.

We find frequent statement in the authorities that the payment must be "at the request of some party liable for the debt." Later cases avoid this expression and leave the fact of payment unqualified, save that it must not be by a volunteer or one acting in his own wrong, and that there must not be superior conflicting equities. It would be difficult to find even an implied request to pay in many of the instances where subrogation has been allowed. We think that conditioning the remedy upon proof of a request of payment, is restricting it to limits which circumscribe its utility and would prevent the doing of justice, the foundation upon which subrogation stands. If plaintiff had paid the defalcation of Selleck with knowledge of it, and the Green estate had had in its possession securities belonging to Selleck to meet the faithful performance of Selleck's duties as administrator, plaintiff would unquestionably have been subrogated to the rights of the estate in these securities. Instances of payments made by one through the fraud of another, where equity has relieved through its remedy of subrogation, are quite numerous. Where one has been induced through fraud to advance money to discharge a lien on a decedent's estate, and the money is so used, the lender will be subrogated to the lien which his money has extinguished. Note to *Hughes* v. *Thomas,* 11 L. R. A. (N. S.) 744 (131 Wis. 315, 111 N. W. 474);

*Bolman* v. *Lohman,* 74 Ala. 507; *Johnson* v. *Barrett,* 117 Ind. 551, 19 N. E. 199. Equity relieves by way of subrogation where one has been compelled to pay by compulsion, or has paid a public charge at the request of or through the fraud of another. In *Webber Lumber Co.* v. *Shaw,* 189 Mass. 366, 75 N. E. 640, an owner of an equity of redemption who had conveyed his equity subject to the tax and was compelled to pay it by the tax collector, was subrogated to the rights of the collector and the tax lien kept alive for his benefit. Similarly the surety on a defaulting sheriff's bond who has paid to the State the obligation arising under his bond, is subrogated to the rights of the State against the sheriff. *Woodyard* v. *Sayre* (West Va.), 110 S. E. Rep. 689.

The record in this case presents this difference to the cases where one has through fraud paid the obligation primarily resting upon another. That difference is that here the obligation of the Surety Company has been paid by the money of the plaintiff, not with its knowledge or consent, but through the wrongful misappropriation of plaintiff's official. When Selleck appropriated to his own uses the funds of the estate, he violated his trust and the obligation of the Surety Company, conditioned upon Selleck's faithful discharge of the duties of his trust according to law, to pay the amount of this defalcation, then arose. This obligation was extinguished by the moneys of the plaintiff. The plaintiff was not in its payment a volunteer, nor acting in its own wrong; nor do the circumstances of record make it inequitable to decree the subrogation of plaintiff to the rights of the creditors and distributees who received the benefit of its payment against the surety. The Surety Company, if relieved of paying the debt which it primarily owed, will retain in its possession what is, in practical effect, plaintiff's money, without

having given anything for it.   Every element in the ordinary instance where the remedy of subrogation is enforced is present, except that in the ordinary case the one claiming to be a subrogee has voluntarily or on legal compulsion paid the debt of the third person, while here the payment was made through the fraudulent misappropriation of plaintiff's funds.   The fact that this appropriation of plaintiff's funds was wrongfully made by a trusted official, seems to us an added reason for the invocation of subrogation—an equitable doctrine designed to prevent injustice—so that the Surety Company, the one liable for the debt the plaintiff has been compelled to pay by the fraud of its agent, shall not enrich itself at the expense of the plaintiff.

Our examination of the authorities leads to the opinion that they, with practical unanimity in cases similar in kind, have sustained the use of the remedy of subrogation.   In *Reddington* v. *Franey*, 131 Wis. 518, 111 N. W. 725, plaintiff bought the interest of one partner in a copartnership, formed a new partnership with the other partner of the old firm, and advanced money to the new firm for the purpose of discounting the bills of the new firm, but his partner, without his knowledge, used this money to pay the debts of the old firm.   The court held that the new firm was the owner of the money so used, and that plaintiff's rights, if any, must be worked out by subrogation of the new firm to the rights of the creditors whose claims were paid.   The opinion states: "It is also held without substantial conflict of opinion that where a fund is misappropriated by an agent or trustee without the owner's consent to the payment of the debt of another, the owner of the fund is not a volunteer, but will be entitled to subrogation if necessary for his protection. . . . The logical conclusion seems to be that T. F. Franey took firm funds without the knowledge of his

partner and wrongfully used them in discharging the debts of the old firm of which he was a member. Certainly this act calls persuasively for the application of the doctrine of subrogation on behalf of the owner of the funds, if necessary for such owner's protection." *Newell* v. *Hadley*, 206 Mass. 335, 92 N. E. 507, presents a case where the trustee of trust A wrongfully appropriated the funds of trust A to the discharge of the debts of trust B of which he was also the trustee. The court held, in an elaborate discussion of the doctrine of subrogation, that upon the discovery of this fraudulent conduct some two years later, trust A was entitled to be subrogated to the rights of the creditors of trust B who had been paid with these funds, and could sue to recover so much of its funds as had been wrongfully applied to the discharge of trust B. A few years later, in a case whose facts resemble those of *Newell* v. *Hadley*, the Supreme Judicial Court of Massachusetts approved of the decision in that case in these words: "That case was decided after great consideration, and the principle there established must be taken to be the law of this Commonwealth. That principle is that where a trustee of several estates steals money from one, with which to pay the debts of another, the latter, having been unjustly enriched at the expense of the former, may be required in equity to make restitution. On the authority of *Newell* v. *Hadley* the bill is not demurrable for want of equity." *Bremer* v. *Williams*, 210 Mass. 256, 257, 96 N. E. 687. See also *Woodard* v. *Woodard*, 216 Mass. 1, 102 N. E. 921. In *Cotton* v. *Dacey*, 61 Fed. Rep. 481, it was held that one who intrusts money to an agent to be invested in land, which he fraudulently uses to pay off a mortgage, may, on discovery of the fraud, be subrogated to the rights of the mortgagee. And when a county treasurer uses the county's money to discharge a mortgage lien

First Taxing District *v.* National Surety Co.

on his wife's separate property, the county will be subrogated to the rights of the mortgagee under the mortgage; and this will be decreed even though the mortgage is formally released by the mortgagee. The court, in the course of its opinion, says: "And it would seem, from the equitable principles quoted, that the county should be subrogated to all the rights of Trammel & Co. to enforce its payment, which would include the mortgage security given by the appellant. This right of the county is one purely in equity to be subrogated to the mortgage, and it arises, not out of possession of the mortgage, or its being cancelled or uncancelled, or formally released, but out of the fact that the payment of the debt it was given to secure was made with appellee's money." *Young* v. *Pecos County,* 46 Tex. Civ. App. 319, 323, 101 S. W. 1055.

The principle controlling these decisions is that which should control this case. One other decision which in its facts brings it closely to the instant case, is *Pittsburgh-Westmoreland Coal Co.* v. *Kerr,* 220 N. Y. 137, 115 N. E. 465. The defendant bank was the owner of a $2,500 note made by one Kerr and indorsed by his uncle, W. B. Kerr. The note was presented for payment and duly protested against maker and indorser for nonpayment. Prior to this note becoming due, Kerr had a contract with plaintiff by which he received certain proceeds which he agreed to send plaintiff. Instead of sending $6,099.22, the amount received by him, he sent $3,500, and wrongfully converted $2,599.22 to his own use, and from this paid the bank the $2,500 note and destroyed it. Three days later W. B. Kerr, the indorser, died, and seven days thereafter Kerr entered into voluntary bankruptcy. The court, in the course of its opinion, said that under the ordinary rule money obtained by the fraud of A could not be recovered when it had been

paid to the creditors of A. "Where, however, a payment with the money of another wrongfully obtained, operates to discharge a lien, . . . or a debt that is secured by collateral, or as in this case by the indorsement of another, the debt may in equity be deemed alive for the benefit of the person whose money was so wrongfully used by the debtor, and such person may be subrogated to the rights of one who owned the debt and the debt be deemed transferred and assigned to such person. The rule stated is founded in equity. Because it is equitable it is enforced by the courts at all times unless there are surrounding circumstances and intervening equities that require a different conclusion. . . . There is nothing that in any way interferes with or affects the simple question whether, under the circumstances disclosed, the note should be considered alive and equitably assigned to the plaintiff, that the maker and the appellants may be held thereon for the benefit of the plaintiff. If the action is not sustained the appellants will secure the discharge of their testator's obligation on the note through a payment from the plaintiff's money by fraud on the part of the maker of the note and without payment on their part or any equity in any way affecting the question under consideration. If such an inequitable result is sustained the court must acknowledge its impotence to prevent wrong and enforce justice." The bank had a just claim against this indorser. So the creditors and distributees of the Green estate had a just claim against the Surety Company for the defalcation of the administrator of this estate. In the first case the maker of the note misappropriated the Coal Company's money and paid the note for which the indorser had become liable. In the second case, Selleck, the administrator of the Green estate, misappropriated plaintiff's funds and paid his defalca-

tion to the Green estate. In the first case the obligation of the indorser to the bank is in equity kept alive for the benefit of the Coal Company, and it is subrogated to the rights of the bank against the indorser. In the second case the claim of the creditors and distributees against the Surety Company should be kept alive for the benefit of the plaintiff, and it subrogated to the rights and remedies of these creditors and distributees against this surety. In no other way can justice be done and the Surety Company be prevented from enriching itself at the expense of the plaintiff. These two cases are substantially alike. See also *Heller Aller Co.* v. *Ries,* 164 Mich. 501, 506, 129 N. W. 724; *Midland Savings & Loan Co.* v. *Sutton,* 55 Okl. 84, 91, 154 Pac. 1133. Equity affects its purpose by creating a relation in the nature of a constructive trust, or of an equitable assignment, and then seeing whether this relation applies to the given case in such way that equity can grant its relief.

There is error and the cause is remanded to be proceeded with according to law.

In this opinion the other judges concurred, except GAGER, J., who held a contrary view on the consultation, but died before the opinion was written.