[No. 21778. Department One. May 1, 1929.]

THEODORE JOHNSON, *Respondent*, v. NATIONAL BANK OF COMMERCE, *Defendant*, GLEN E. WILSON, *as Administrator, Appellant*.[1]

[1]Reported in 277 Pac. 79.

*Roberts, Skeel & Holman* and *Glen E. Wilson,* for appellant.

*Shorett, McLaren, Shorett & Taylor,* for respondent.

Tolman, J.—This case is an aftermath of *Johnson v. Wilson,* 145 Wash. 515, 261 Pac. 102. The initial facts out of which the present controversy arises are there set forth, and need not be here restated.

The result of the former case was to establish title in respondent here to the Celian Building Company note and mortgage, subject only to the rights of the National Bank of Commerce, which held it as collateral for a loan made by it to Robinson, and a denial, as against the bank, of the right of the respondent to have the securities held as collateral by the bank marshaled so as to first exhaust those securities in which respondent had no interest.

After judgment in the former case, the Celian Building Company paid into court the amount, both principal and interest, necessary to pay and retire its note and mortgage, and that amount was paid to the bank and credited upon the Robinson indebtedness to the bank. Thereupon respondent brought the present action, alleging that the payment by the Celian Building Company of its obligation reduced the bank's claim against Robinson to a few hundred dollars, which he offered to pay, and demanded that, upon such payment by him to the bank, he be subrogated to the original rights of the bank in and to all of the other

securities held by it as collateral to the Robinson loan.

Three affirmative defenses were interposed to this action: (1) That respondent had failed to file any claim against the Robinson estate for or on account of the cause of action alleged, and that his present cause of action was therefore barred; (2) that the judgment in the former action is a bar to this action; and (3) that, by seeking a marshaling of the securities in the former action, respondent had made an election of the remedies and, by that election, is now estopped from seeking the relief of subrogation. The trial court awarded the plaintiff the relief sought, and the defendant Wilson, as administrator, has appealed. The facts are all stipulated and there is nothing now presented save questions of law.

It is urged that respondent's right of subrogation is barred by the former judgment, because such rights might have been set forth in his complaint in that action and there have been adjudicated. Appellant cites the familiar rule that, as between the same parties or their privies, a judgment is *res judicata,* not only as to all matters litigated, but also as to every other matter which might have been litigated.

*Sweeney v. Waterhouse & Co.,* 43 Wash. 613, 86 Pac. 946; *State ex rel. Gladwin v. Cheney,* 67 Wash. 151, 121 Pac. 48; *Thompson v. Washington Nat. Bank,* 68 Wash. 42, 122 Pac. 606, 39 L. R. A. (N. S.) 972; *Perlus v. Silver,* 71 Wash. 338, 128 Pac. 661; *Tacoma Mill Co. v. Northern Pacific R. Co.,* 102 Wash. 95, 172 Pac. 812; and other cases to the same effect.

We acknowledge the rule, and reaffirm our adherence to the principles enumerated in the cases cited, but it does not follow that it is applicable here. In *Northern Pacific R. Co. v. Snohomish County,* 101 Wash. 686, 172 Pac. 878, it is said:

"To make a judgment *res judicata* in a subsequent action there must be a concurrence of identity in four respects: (1) of subject-matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of the persons for or against whom the claim is made."

And in *Harsin v. Oman,* 68 Wash. 281, 123 Pac. 1, it is said:

"While it is admitted, there can be but one recovery upon the same cause of action. This does not mean the subject-matter of a cause of action can be litigated but once. It may be litigated as often as an independent cause of action arises which, because of its subsequent creation, could not have been litigated in the former suit, as the right did not then exist. It follows from the very nature of things that a cause of action which did not exist at the time of a former judgment could not have been the subject-matter of the action sustaining that judgment."

See, also, *State ex rel. Weyant v. Seattle,* 127 Wash. 681, 221 Pac. 997.

With these added principles in mind, let us see whether the present issues might have been litigated in the former action. In the former case, the only issues made by the pleadings were as to the ownership of the note and mortgage, and the rights of the bank therein. At the close of the trial, a marshaling was asked for, but that was denied principally, if not solely, because it did not affirmatively appear that a marshaling would be equitable as to the bank.

Subsequent to the entry of judgment in the former case, events took place which entirely changed the relationship of the parties. The Celian Building Company paid its obligation, the bank received the money and applied it upon the Robinson loan. The effect of this payment and application of the money was to completely destroy the note and mortgage as a legal

obligation. It could not longer be enforced against the Celian Building Company or anyone else. Respondent's property, so far as it consisted of a legal right to recover money, was thereby absolutely extinguished, and then and only then there arose the equitable right of subrogation. The right to subrogation not being in existence at the time the former judgment was rendered, that judgment cannot be *res judicata* as to such subsequently accruing right. *State v. Torinus,* 28 Minn. 175, 9 N. W. 725, 34 C. J. 808.

What we have already said, seems also to dispose of the defense of an election of remedies. As there was no right of subrogation in existence when the marshaling was asked for, there was and could have been no election. *Spokane Security Finance Co. v. Crowley Lumber Co.,* 150 Wash. 559, 274 Pac. 102.

That subrogation is a proper equitable remedy to be applied under conditions here shown, cannot be doubted. 25 R. C. L., p. 1311-1313; 37 Cyc. 363-467; *Bollong v. Corman,* 125 Wash. 441, 217 Pac. 27; *Minshull v. American Surety Co. of New York,* 141 Wash. 440, 252 Pac. 147; *First Taxing District v. Gregory,* 97 Conn. 639, 118 Atl. 96; *Heller Aller Co. v. Ries,* 164 Mich. 501, 129 N. W. 724.

The failure to present a claim against the Robinson estate is, we think, without effect here. The claims which the statutes require to be so presented are, speaking generally, such as exist at the time of the decedent's death. This claim did not so exist and, moreover, it is in no proper sense a claim against the Robinson estate at all. By the former judgment, respondent's title to the note and mortgage were affirmed, subject only to the rights of the bank, and respondent could have done what he would with the note and mortgage without in any way affecting the rights of the Robinson estate. If the other collateral had been first

paid in an amount sufficient to retire the bank's loan, respondent would have come into complete and untrammeled possession and ownership of the note and mortgage, and could have received the proceeds without any accounting to the Robinson estate. By chance, or contingency, with which none of the parties to this action had anything to do, the Celian note was first paid, thereby discharging the debt for which it and the Robinson securities were pledged, and then only arose the equitable right of subrogation, which only incidentally affects the Robinson estate. Suppose the situation had been reversed and, by the payment of the other collateral, the Celian note had been released. Could the Robinson estate have complained?

In the sense of having a claim requiring presentation, respondent could have had such a claim against the Robinson estate only by affirming Robinson's act in pledging that which belonged to the respondent and seeking to hold the estate for the value of the security so converted. But respondent, instead of that, successfully disaffirmed Robinson's act and recovered his security, except only as to the rights of the bank, which was in the position of an innocent purchaser. Having so recovered it, and now, after Robinson's death, finding it to be extinguished by the chance that it was first paid, he, in equity, ought to be subrogated to the rights of the bank, to the end that the Robinson securities should respond for the Robinson debt to the bank, leaving free, so far as possible, respondent's security, which Robinson wrongfully pledged along with his own.

Robinson, and presumably the Robinson estate, have already been enriched by the $6,000 which respondent paid to Robinson for this security, and again enriched by the money borrowed from the bank on the strength and credit of this security. The Robinson

estate should not be further enriched by having the whole of its debt to the bank paid by respondent's security, in which it had no interest. There is no inequity to Robinson's creditors, even though the estate be insolvent, in awarding subrogation as to the remaining securities pledged for this same debt.

The judgment is therefore affirmed.

MITCHELL, C. J., HOLCOMB, FULLERTON, and BEALS, JJ., concur.