WILLIAM F. AVEY, Plaintiff, *v.* AMERICAN SURETY COMPANY OF NEW YORK, Defendant.

Supreme Court, Erie County, June, 1930.

*Elijah W. Holt*, for the plaintiff.

*Arthur Otten*, for the defendant.

WHEELER, Official Referee. This action is brought to recover $2,223.58 on a bond given by Frank C. Nordblum as principal and the defendant as surety for the faithful discharge by Nordblum of his duties as collector of taxes for the town of Brant, Erie county, to which office the said Nordblum had been elected.

The tax roll for the collection of taxes with the proper warrant was delivered to Nordblum by the county treasurer of Erie county. A portion of such taxes when collected were payable to the county treasurer. Another portion of such taxes belonged to the town of Brant and were payable to the plaintiff, Avey, as supervisor of the town. There appears to be no dispute but that Nordblum collected from taxpayers the sum of $2,223.58 which the town never in fact received until a settlement therefor was subsequently made by Avey, the supervisor, as later related in this opinion, and that either Nordblum never in fact paid said amount over to Avey as supervisor, or that Avey had received said amount from Nordblum as supervisor and never paid the said amount to the town until charged with a failure so to do by members of the town board.

Either Nordblum or Avey were defaulters in the amount stated. If Avey in fact was paid this amount by Nordblum, then he had discharged his duty as collector, and the defendant is not liable on the bond given. Avey, the plaintiff, contends in this action that, having been charged by the town board with a defalcation for the amount, he subsequently paid to his successor in office the amount in question and under the circumstances of the case became

subrogated to the right of recovery upon the bond against the surety company. He, therefore, has brought this action to recover the sum paid by him, and in his complaint charges that Nordblum, the collector, was the defaulter.

He testified he never in fact received this $2,223.58 from Nordblum, while Nordblum, on the other hand, as a witness for the defendant, testified he in fact paid Avey, the supervisor, the amount in dispute. It, therefore, in the first instance, becomes a question of fact whether Nordblum did make to Avey the payments he claims to have made.

The referee has carefully considered all the evidence given on the hearing before him and reaches the conclusion, from all the testimony, Nordblum did not pay over to Avey as supervisor this sum of $2,223.58.

The circumstances of the case are most peculiar and the course of dealing between Nordblum and Avey very unusual and unbusinesslike. It is not disputed Avey as supervisor had accounts in various banks standing in his name as supervisor, and that, on occasions when taxes were paid to Nordblum, he would make deposits in these banks to the credit of Avey as supervisor. From time to time Avey would give Nordblum receipts for moneys so deposited and such receipts were filed with the county treasurer to show the disposition by Nordblum of the tax moneys collected. Nordblum had not returned the tax roll of the county treasurer, and the county treasurer was writing letters to him demanding the return of the roll and an account of the taxes received. The last letter from the county treasurer stated Nordblum owed the town for such collections $2,223.58.

Nordblum testified he took and showed this letter to Avey and asked him to give him a receipt for the amount. Avey testified substantially to the same, and further stated Nordblum then represented to him that he had paid or deposited in the banks referred to this sum of $2,223.58, and that, upon that representation, he, Avey, then gave Nordblum a receipt for this $2,223.58, which Nordblum filed with the county treasurer. Nordblum in his testimony before this referee testified to his giving of the receipt substantially as Avey testified. There was no figuring up by them from the tax rolls and bank deposits to show that Avey had in fact received this $2,223.58. Avey apparently took Nordblum's word for it. Nordblum testified he had paid Avey some small sums in cash in addition to the deposits, and the rest of the $2,223.58 had been deposited by him in the banks to Avey's credit as supervisor. If such were the facts, the accounts in the various banks would show the deposits, and evidence of these accounts was given

before the referee, and it was shown that no such deposits as claimed by Nordblum were in fact ever made by him. But one conclusion can be reached on such a showing, and that is that Nordblum never made such deposits and that he misrepresented to Avey the facts and induced the giving by Avey of the receipt for the sum by misrepresentation.

There are other facts and circumstances in the case which tend to confirm the referee's conclusion that Nordblum and not Avey was the defaulter. However, the whole matter appears to have come to the attention of members of the town board of the town of Brant and also to the attention of the State Comptroller, who sent a representative to investigate. Criminal proceedings were instituted against Avey, and he was indicted by the grand jury, not only for the shortage of this $2,223.58, but also for a failure to account for other moneys it was claimed he had failed to account for, in all amounting to some $11,000 and more. Avey's resignation as supervisor was asked. He resigned and his successor was named. Civil action was threatened. Avey should have defended, but he was confronted by his own receipt for the $2,223.58 and certainly the case against Avey looked bad, and apparently there was every prospect of a conviction on the criminal charge. Avey probably thought that the best thing he could do was to square himself with the town, and he did raise the necessary money to pay the amount for which he was charged with being short. He pleaded guilty to the criminal charge and threw himself on the leniency of the court and received a sentence of one year, which was suspended and he was placed on probation. All these facts, of course, point strongly to Avey's guilt on the charge of being a defaulter as to the $2,223.58, and but for the positive proof that Nordblum never did in fact make the bank deposits he claimed would have led the referee to a far different conclusion from that which he has reached. It should be borne in mind that the indictment returned against Avey was not simply for his failure to pay over and account for the $2,223.58 in question, but for his alleged failure to account for the total of some $11,000 which the Comptroller's representative and the town board claimed he was short, turning over to the town most of the $11,000 growing out of other transactions wholly disconnected with the item of $2,223.58.

It is conceivable that Avey's plea of guilty was at least in part induced by reason of the other charges of misconduct and was not necessarily to be deemed an admission of guilt of misappropriating the $2,223.58 which the evidence before the referee is convincing he did not in fact misappropriate. It is a possible explanation of his plea of guilty to the indictment.

In spite of these facts as to the conduct of Avey, the referee is forced to find that Nordblum and not Avey is the real defaulter as to this $2,223.58.

The defendant, however, contends that Avey voluntarily paid to the town the amount of Nordblum's shortage, and, being a volunteer as to such payment, is not entitled to any subrogation to the right of action against this defendant, the surety company.

In a certain sense it may be claimed the plaintiff paid the town of Brant the shortage of Nordblum voluntarily. He did this apparently without consultation with the surety company.

On the other hand, he had become so involved in the whole affair and by virtue of his own negligent acts, that he had been indicted with the probability of conviction and a term of imprisonment, and was also threatened with a civil action for the recovery of his alleged shortage. To save himself as far as possible he thought it best to settle with the town, pay the shortage, plead guilty to the criminal charge, and let his settlement appeal to the court for leniency. This he did, and the question is whether payment under such circumstances amounted to such compulsion or duress as to entitle him to subrogation to a claim against the surety company.

The plaintiff began this action against the company. This was followed by a motion by the defendant at Special Term to dismiss the complaint on the ground it failed to state a cause of action. The original complaint failed to allege the circumstances now relied on to sustain a subrogation. The motion was heard by Mr. Justice LARKIN, who sustained the defendant's contention, but gave the plaintiff the right to amend, which he did, setting up in the amended complaint the facts on which he now claims the right to recover.

The defendant then made a second motion to dismiss the amended complaint on the same grounds and this second motion again came before Mr. Justice LARKIN for decision. This second motion the court denied, holding the complaint sufficient (146 Misc. 228). Mr. Justice LARKIN wrote an opinion disposing of the motion, holding on the facts alleged that the payment by the plaintiff was not a voluntary one and was made under compulsion and he was, therefore, subrogated to the rights of the town or himself as supervisor against the collector and surety company and citing in support of his conclusion the cases of *Pittsburgh-Westmoreland Coal Co.* v. *Kerr* (220 N. Y. 137, 142); *First Taxing District* v. *National Surety Co.* (97 Conn. 639; 118 Atl. 96).

The headnote in the *Kerr* case states the doctrine laid down by the court that " the right of subrogation or of equitable assignment is not founded upon contract nor upon the absence of contract, but upon the facts and circumstances of a particular case and upon

principles of natural justice. The remedy is no longer limited to sureties and *quasi* sureties, but includes so wide a range of subjects that it has been called the ' mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it.' "

The referee feels constrained to follow the holding of the learned justice at Special Term.

The referee might add that in 30 Cyc. 1307, it is stated that " Demands and threats of persons clothed with governmental authority to carry them into execution by arrest and prosecution stand on a different footing from demands and threats of private individuals, and money paid because thereof may be recovered back." (Citing *Deshong* v. *New York*, 176 N. Y. 475.)

If the collector was the real defaulter, as we have found, then the surety company became legally liable to pay the amount of his shortage and the referee thinks there is no injustice in requiring it so to do, and that equity will see that it makes good to the plaintiff the amount paid by the plaintiff to the town, and that, under the circumstances of this case, we are justified in holding the payment made by the plaintiff was not a voluntary one, but one made under duress.

Other technical defenses have been made by the defendant to the maintenance of this action. All such questions, however, were presented and decided by Mr. Justice LARKIN in the disposition of the motions made at Special Term to dismiss the complaint, and we think rightly decided; and this referee enters into no discussion of said questions in this opinion, but adopts the views stated in Mr. Justice LARKIN's opinions on those motions.

Judgment is directed in favor of the plaintiff against defendant for the amount demanded in the complaint. So ordered.