**Grant THORNTON, Appellee,**

v.

**SYRACUSE SAVINGS BANK, Appellant.**

**No. 1056, Docket 91–9159.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 9, 1991.

After remand, final briefs submitted
in Feb. 1992.

Decided April 10, 1992.

John Spelman, Philadelphia, Pa., (Charlotte E. Thomas, and Klehr, Harrison, Harvey, Branzburg & Ellers on the brief), for appellant.

Stanley J. Parzen, Chicago, Ill., (Marc Gary, Wendy Ackerman, Thomas W. Dimond, and Mayer, Brown & Platt, on the brief), for appellee.

Before FEINBERG, TIMBERS and NEWMAN, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Syracuse Savings Bank, also known as Norstar Bank of Central New York (Syracuse or the bank), appeals from a summary judgment in favor of appellee Grant Thornton entered October 1, 1991 in the District of Connecticut, Warren W. Eginton, *District Judge*, dismissing Syracuse's cross-claim for equitable subrogation.

The court held (1) that Syracuse was not entitled to discovery of a settlement agreement between Grant Thornton, a national accounting firm, and certain third party investors, (2) that Syracuse failed to state a claim under state law for equitable subrogation, and (3) that any claim for equitable subrogation was pre-empted by federal law.

Syracuse challenges these rulings on appeal. For the reasons that follow, we affirm the decision of the district court as to the first two rulings, but we do not reach the merits of the third.

## I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

In 1985, an entity known as NATCO announced that it would undertake the renovation of a complex of properties near the boardwalk in Atlantic City, New Jersey, which would result in the creation of a tourist center known as "Boardwalk Marketplace." Boardwalk Marketplace was to be financed through the sale of interests in a number of limited partnerships. Inves-

tors financed their purchases of interests through the execution of promissory notes which were then sold in the secondary market. Syracuse allegedly paid par value for approximately $35,000,000 worth of notes, making it the largest single secondary purchaser.

Several months after Syracuse obtained the investors' notes, NATCO and the limited partnerships went into bankruptcy. Many investors refused to make further payments on the notes. They filed a class action against numerous defendants, including Syracuse and Grant Thornton. The investors claimed to have relied, at least in part, on NATCO financial statements audited by Grant Thornton and financial projections included in the Boardwalk partnership offering memoranda compiled by Grant Thornton. The investors charged that Grant Thornton acted negligently and violated § 10(b) of the Securities Exchange Act and SEC Rule 10b–5. With respect to Syracuse, the investors sought rescission of the promissory notes and damages on the ground that it and other defendant banks knew or had reason to know of the alleged securities fraud and therefore did not acquire the notes in good faith.

On September 14, 1987, the district court held that Syracuse was not a holder in due course of the negotiable instruments because the promissory notes were not negotiable. *In re Boardwalk Marketplace Sec. Litig.*, 668 F.Supp. 115 (D.Conn.1987). Following that decision, the bank and investors entered into a settlement agreement under which the investors agreed to pay 35% of the principal amount of the notes held by Syracuse and the investors' obligations to repay the remaining 65% were discharged. The district court approved the settlement and dismissed the investors' claims against Syracuse. The settlement agreement did not address the issue of whether Syracuse was subrogated to the investors' claims as to the 65% of the debt that was discharged.

After settling with the investors, Syracuse filed several cross-claims against Grant Thornton and its co-defendants. In one cross-claim, which is the subject of this appeal, Syracuse alleged that, as a result of its settlement with the investors which had partially discharged the investors' obligations to it, Syracuse had become "subrogated" to the investors' claims against Grant Thornton to the extent of the discharge (65%).

On March 10, 1989, Grant Thornton moved to dismiss the bank's cross-claims. Before that motion was fully briefed, Syracuse filed an amended cross-claim which deleted all claims against Grant Thornton other than the subrogation claim. On July 18, Grant Thornton again moved to dismiss on the grounds, among others, (1) that Syracuse failed to state a valid subrogation claim in that the cross-claim did not allege that Syracuse had discharged a debt for which Grant Thornton was primarily liable; (2) that Syracuse had alleged only a partial satisfaction of a debt as distinguished from the full payment required for subrogation; and (3) that Syracuse did not have a right of subrogation under the securities law.

In response to Grant Thornton's motion, Syracuse argued that the "full payment" rule applies only when the primary creditors (here, the investors) object to the subrogation claim. Shortly thereafter, the investors did object to the subrogation claim.

Before the court rendered a decision on the motion to dismiss, the investors and Grant Thornton on May 23, 1990 filed a stipulation of settlement. That stipulation expressly provided that Grant Thornton could withdraw from the settlement if "the Court does not enter an order or judgment granting the motion to dismiss the Syracuse Subrogation Claim with prejudice, which order or judgment has become Final."

On July 11, the court approved the settlement between Grant Thornton and the investors. On the same day, pursuant to Fed.R.Civ.P. 12(b)(6), the court dismissed Syracuse's subrogation cross-claim because the investors objected to the subrogation claim. The court stated that "the interests of the creditors would ... clearly be impaired by the assertion of a cross-claim for partial subrogation." While acknowledging that Syracuse had offered to stipu-

late to subordinate its rights to those of the investors, the court held that "such a stipulation is a matter for the parties to negotiate rather than an issue for the Court to decide. Indeed, this is a matter which could well have been negotiated at the time the Bank Defendants settled with the investors."

The court certified its ruling as a final judgment pursuant to Fed.R.Civ.P. 54(b). An appeal was taken to our Court. The investors filed an *amicus* brief, arguing that they had a vital interest in the appeal insofar as their settlement with Grant Thornton could be rescinded in the event that the district court's decision dismissing the cross-claim later was reversed.

On January 9, 1991, we heard Syracuse's appeal from the order dismissing with prejudice, pursuant to Rule 12(b)(6), Syracuse's cross-claim for equitable subrogation against Grant Thornton. In an unpublished order, we held that in considering Grant Thornton's motion to dismiss pursuant to Rule 12(b)(6) the district court relied on matters outside the pleadings—namely, the terms and effects of settlement agreements between the parties that were then before the court—and that Grant Thornton's motion therefore should have been converted into a motion for summary judgment pursuant to Fed.R.Civ.P. 56. *Kopec v. Coughlin*, 922 F.2d 152, 154–55 (2 Cir. 1991). We vacated the district court's judgment of dismissal and remanded the case with instructions to convert the motion to dismiss into one for summary judgment and to permit the parties an opportunity to present supporting material.

On January 25, 1991, Magistrate Judge Margolis held a telephone conference in which Syracuse, Grant Thornton and the investors participated. Syracuse subsequently filed, pursuant to Fed.R.Civ.P. 56(f), an affidavit describing the general area in which it desired discovery to establish a record in opposition to Grant Thornton's motion for summary judgment. In this affidavit, Syracuse stated a need for discovery relating to the settlement agreement between Grant Thornton and the investors. Syracuse requested:

"[A]ll writings or documents relating to the settlement, including: all drafts of the agreement, all correspondence and communications relating thereto, and all memoranda and legal research relating thereto."

On February 25, 1991, the magistrate ruled that the broad discovery described in Syracuse's Rule 56(f) affidavit was not permissible under the work-product doctrine and the client confidentiality privilege. This ruling was made before any discovery requests were made. Syracuse filed an objection. The district court referred the matter back to the magistrate. While recognizing that "a party can be deemed to have waived its attorney-client privilege and/or work-product privilege with respect to a settlement when it injects into litigation an issue which requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct with respect to such settlement," the magistrate ruled that discovery was precluded because discovery was sought in "the very action in which the discovery issues arose." This subsequent ruling by the magistrate was adopted by the district court.

On October 1, 1991, the district court granted Grant Thornton's motion for summary judgment. Syracuse now appeals from that judgment. On appeal, Syracuse contends that its claim satisfied the requirements for equitable subrogation, and accordingly the judgment of the district court should be reversed. Syracuse further contends that the court erroneously denied its requests for discovery.

## II.

### A.

We turn first to Syracuse's claim regarding the court's order denying discovery. Syracuse asserts that the court erred in holding that Syracuse failed to make a sufficient showing under Rule 56(f) to permit discovery with respect to the investors' settlement with Grant Thornton, and that this denial deprived it of a fair hearing.

Rule 56(f) provides that:

"Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

The court denied Syracuse's request for delay pursuant to Rule 56(f). The court adopted the magistrate's findings that "under the unique circumstances of the pending motion for summary judgment, all the items sought [by Syracuse] are privileged documents under the attorney-client privilege or the work-product doctrine." The court stated that it was not denying Syracuse the opportunity for discovery, but rather "that Syracuse had not met the standard for justifying discovery of all files relating to settlement negotiations between the attorneys for Grant [Thornton] and the Investors."

 An attorney-client privilege may be waived if a party "injects into ... litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct." *GAB Business Services, Inc. v. Syndicate 627,* 809 F.2d 755, 762 (11 Cir.1987); *Laughner v. United States,* 373 F.2d 326 (5 Cir.1967). Discovery with respect to a settlement agreement of an ongoing litigation, however, is permissible only where the moving party "lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive...." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago,* 834 F.2d 677, 684 (7 Cir.1987). This is necessary to prevent parties from learning their opponents' strategies. *Id.* The magistrate found that "[t]here is *nothing* in the terms of the settlement, which were approved after a duly noticed 'fairness hearing,' or the timing thereof, to even remotely suggest that counsel engaged in any 'hanky-panky' to the detriment of Syracuse." Syracuse has given no reason for concluding that the court's decision limiting discovery was an abuse of discretion. *New York State Nat'l Organ. for Women v. Terry,* 886 F.2d 1339, 1354 (2 Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *Robertson v. Nat'l Basketball Ass'n,* 622 F.2d 34, 35–36 (2 Cir.1980).

### B.

We turn next to the question of whether the court properly granted Grant Thornton's motion for summary judgment pursuant to Rule 56. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). It is appropriate only "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra,* 477 U.S. at 322, 106 S.Ct. at 2552; *Quarles v. GMC (Motors Holding Div.),* 758 F.2d 839, 840 (2 Cir.1985) ("Once a moving party has made a showing that no material issues of fact are in dispute, mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion."). The moving party has the initial burden of establishing the lack of material issues of fact. In reaching that conclusion, all inferences must be drawn in favor of the non-moving party. *Id.; Thompson v. Gjivoje,* 896 F.2d 716, 721 (2 Cir.1990).

For the reasons that follow, we hold that the district court did not err in granting Grant Thornton's summary judgment motion to dismiss Syracuse's cross-claim for equitable subrogation.

"Equitable subrogation ... is a legal fiction entitling a person to reimbursement for discharging the debt or obligation for one who should have paid it." *Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves,* 709 F.Supp. 44, 49 (D.Conn.1989).

Under that doctrine, "one who, not as a volunteer or in his own wrong and where there are no outstanding and superior equities, pays the debt of another, is substituted to all the rights and remedies of the other, and the debt is treated in equity as still existing for his benefit." *First Taxing District v. National Surety Co.*, 97 Conn. 639, 642, 118 A. 96 (1922). Syracuse claims to have become subrogated to the claims of the investors to the extent that it discharged their notes. Along this line of reasoning, Syracuse argues that it is justified in asserting any claims against Grant Thornton which the investors asserted in their complaint. For this reason, Syracuse believes that it has become subrogated to the investors' claims that Grant Thornton was negligent and violated the Securities Exchange Act.

■ Subrogation may be utilized only after full payment of the debt owed the subrogor. *Savings Bank v. Kane*, 35 Conn. Supp. 82, 86, 396 A.2d 952 (Conn.C.P.1978); *see First Taxing District, supra*, 97 Conn. at 642, 118 A. 96; *see also Mid–States Ins. Co. v. American Fidelity & Casualty Co.*, 234 F.2d 721, 731 (9 Cir.1956); *Maryland Casualty Co. v. Sparks*, 76 F.2d 929, 932 (6 Cir.1935); *Restatement of Restitution* § 162(c) (1937). This rule is designed "for the protection and benefits of the [original] creditor." *Savings Bank, supra*, 35 Conn. Supp. at 86, 396 A.2d 952.

■ Subrogation was an issue that should have been addressed by the parties to the instant action at the time they entered into the settlement. There is no reason to believe that, since the agreement in which Syracuse discharged 65% of the investors' notes did not address the issue of subrogation, the investors implicitly agreed to Syracuse's becoming subrogated to their claims to the extent of the discharge. There is no legal principle that would warrant this inference. Accordingly, we agree with the district court that the investors have a superior equitable claim to that of Syracuse.

■ The rule against partial subrogation does not apply if the subrogor acquiesces in the subrogation. *Mid–States Ins., supra*, 234 F.2d at 731. If, however, the primary creditor objects to the partial subrogation, and this objection is made to protect the primary creditor's interests, then the subrogation claim necessarily must fail. *See Mutual Life Ins. Co. v. Grissett*, 500 F.Supp. 159, 163 (M.D.Ala.1980) (finding the rule against partial subrogation not applicable where subrogation would not work to the detriment of the creditor). As the court stated, the investors "repeatedly and strenuously objected to Syracuse's subrogation claims." Accordingly, the only remaining issue is whether the investors' interests are impaired by Syracuse's cross-claim for equitable subrogation. The court, after resolving all factual inferences in favor of Syracuse, held that Syracuse's cross-claim for equitable subrogation would impair the investors' interests. In reaching this conclusion, the court stated:

"Syracuse's subrogation claim creates a substantial uncertainty as to the plaintiffs' ability to protect their interests as to claims retained after the Syracuse Settlement. It is axiomatic that a defendant would pay more for a settlement that entirely extinguishes a claim than he would pay for a settlement that allows a partial subrogation claim for additional liability to remain alive. The Court finds that the cross-claim, in and of itself, prejudices the Plaintiffs. Nor has Syracuse provided any basis for its naked allegation that plaintiffs manufactured their own impairment by agreeing to the opt-out provision. Syracuse's cross-claim against Grant [Thornton] impairs the Investors' interest in obtaining full compensation. The cross-claim exposes Grant [Thornton] to additional liability beyond that which the Investors' now seek and makes settlement of the class more difficult. The ability of the class to recover full compensation is prejudiced because Grant [Thornton] has the opportunity of opting out of the settlement. The opt-out clause was not the cause of

the impairment. The opt-out clause in the settlement agreement was a response to, and the result of, the impairment engendered by the pendency of the cross-claim."

Syracuse attempts to avoid the issue of prejudice by asserting that it is willing to stipulate to subordination of its claims to those of the investors. As the court observed, however, Syracuse could have provided for the subrogation it now seeks in its settlement with the investors. Syracuse remained silent as to its intention to become subrogated to the investors' claims despite the fact that the investors argued both in writing and before the court that a primary factor in their decision to settle with Syracuse was to facilitate their ability to recover from Grant Thornton. We hold that, under all the circumstances, the bank had an obligation to speak up and inform the parties and the court of its intention to assert a subrogation claim.

The court further found Syracuse's claim to be lacking because Syracuse failed to establish that it paid a debt for which Grant Thornton was primarily liable. *In re New England Fish Co.*, 749 F.2d 1277, 1282 (9 Cir.1984) (holding that equitable subrogation may be invoked only where a party paid a debt for which another was primarily liable). Further, the court stated that "[p]ursuant to the Syracuse Settlement Agreement, Syracuse agreed to release the investors from 65% of the Investors' obligation on the promissory notes. In return, the Investors agreed to pay Syracuse 35% of the face value of the notes. Therefore, the only discharged debt was the debt owed by the Investors to Syracuse." For these reasons, we agree with the court that Syracuse failed to allege a claim of equitable subrogation.

The court held in the alternative that Syracuse's claim fails because there is no right to subrogation under the federal securities laws, and any state subrogation claim is preempted. Since we affirm the district court for the reasons set forth above, we do not reach its alternative holding.

III.

To summarize:

We hold that the court properly denied Syracuse's request for discovery pursuant to Rule 56(f). Syracuse failed to make the requisite showing of collusion in order to justify the broad discovery of the Grant Thornton-investors' settlement agreement which it requested. We further hold that Syracuse's cross-claim for equitable subrogation fails because the investors' rights would not be impaired by this subrogation claim and because Syracuse did not pay a debt for which Grant Thornton was primarily liable.

Affirmed.