The CHASE MANHATTAN BANK, N.A., Plaintiff,

v.

KEYSTONE DISTRIBUTORS, INC., Defendant.

No. 93 Civ. 6112 (PKL).

United States District Court, S.D. New York.

Nov. 22, 1994.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Martin Flumenbaum, Richard A. Rosen, Franz W. Paasche, George E. Anhang, of counsel, for plaintiff.

Pollack & Kaminsky, New York City, Daniel A. Pollack, Anthony Zaccaria, of counsel, for defendant.

## OPINION AND ORDER

LEISURE, District Judge.

This is an action brought by Chase Manhattan Bank, N.A., ("Chase") against Keystone Distributors, Inc., ("KDI"). The parties entered into a contract (the "Contract"), Ex. A to Motion to Dismiss and for Summary Judgment, and Chase asserts that KDI owes it money according to the terms of the Contract. Chase also alleges a fraud claim and several tort claims. Defendant now moves this Court to dismiss the complaint as a matter of law, pursuant to Fed.R.Civ.P. 12(b)(6), and alternatively for summary judgment, pursuant to Fed.R.Civ.P. 56. Plaintiff opposes defendant's motion. For the reasons stated below, defendant's motion is granted in part and denied in part.

## BACKGROUND

The parties to this lawsuit, Chase, a New York City-based national bank, and KDI, a Boston-based mutual fund distribution company, are both sophisticated entities. On or

about December 21, 1988, they entered into the Contract.[1] The transaction which is the subject matter of the Contract is fairly straight forward.

Between June 1, 1983 and November 30, 1988, KDI advanced certain of its own monies to nine separate mutual funds (together the "Funds" or, individually, a "Fund"). Memorandum in Support of Motion to Dismiss and for Summary Judgment ("Defendant Mem.") at 2. The monies were advanced by KDI from its own resources for sales commissions to brokers and dealers on the sale of Fund shares and to itself for costs incurred in selling Fund shares. *Id.* at 3. The Contract was an arrangement whereby Chase bought and KDI sold all of KDI's right, title, and interest in and to a portion of the reimbursements of these monies, if any, by the Funds.[2] *Id.* at 2. Chase paid $58.8 million to KDI to receive the income stream generated by these reimbursement payments, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and for Summary Judgment ("Plaintiff Mem.") at 1, and had received approximately $62 million at the time of the filing of the instant motion, Defendant Mem. at 3.

The instant action was brought by Chase. Chase alleges that KDI repeatedly breached the express provisions of the Contract and thereby wrongfully deprived Chase of at least $16 million that KDI received from the Funds. Chase further contends that KDI has breached its duty of good faith and fair dealing, has breached its fiduciary duties to Chase, and has committed fraud. In response to Chase's allegations, KDI has brought the instant motions to dismiss and for summary judgment. KDI argues that the express provisions of the Contract render Chase's allegations meritless. This Court, for the most part, agrees.

## DISCUSSION

### A. *Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). Summary judgment "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Thornton v. Syracuse Sav. Bank,* 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552); *accord Irvin Indus., Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241, 245 (2d Cir.1992).

"In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Id.; accord Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991).

In the instant action, the parties dispute the interpretation of a seventy page contract. In the context of determining the proper construction of a contract, summary judgment may be granted where the contractual language conveys a "definite and precise meaning absent any ambiguity." *Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992); *see also Heyman v.*

---

1. Chase stands in the shoes of the special purpose corporation, Recovery Funding Corporation, which Chase formed to enter into the Contract with KDI.

2. Interestingly, both parties knew that there was no legal obligation by any of the mutual funds to repay any of the monies advanced by KDI. This fact was specifically noted in the Contract itself.

Commerce and Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir.1975). However, when ambiguity exists and "the resolution of the ambiguity hinges on such extrinsic matters as the credibility of witnesses or documents or upon choosing one among several reasonable inferences that may be drawn from such extrinsic evidence, a jury, and not a court, should decide what meaning is to be ascribed to the contract." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142 (2d Cir. 1993); *see also Seiden Assoc.*, 959 F.2d at 428; *Record Club of America, Inc. v. United Artists Records, Inc.*, 890 F.2d 1264, 1271 (2d Cir.1989).

 It is well settled that whether ambiguity exists in a contract is a threshold question of law to be resolved by the court. Contract language is unambiguous when it has " 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion.' " *Seiden Assoc.*, 959 F.2d at 428 (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989)). Conversely, contractual language is considered ambiguous when it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987); *see also Seiden Assoc.*, 959 F.2d at 428.

 Where the terms of the agreement, "giving due consideration to the surrounding circumstances [and] apparent purpose which the parties seek to accomplish" are not "wholly unambiguous," summary judgment is improper. *Morse/Diesel, Inc. v. Fidelity and Deposit Co.*, 1990 WL 74545, at *3, 1990 U.S. Dist. LEXIS 6548, at *9 (S.D.N.Y.) (Leisure, J.) (citations omitted). The Second Circuit, however, has observed that when the language of the contract is plain it "is not made ambiguous simply because the parties urge different interpretations." *Seiden Assoc.*, 959 F.2d at 428; *see also Wertheim Schroder*

& Co. v. Avon Products, Inc., 1993 WL 126427, 1993 U.S. Dist. LEXIS 6184 (S.D.N.Y.) (Leisure J.). In addition, ambiguity is not created where one party's interpretation " 'strains the contract language beyond its reasonable and ordinary meaning.' " *Seiden Assoc.* 959 F.2d at 428 (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957)). Lastly, the Second Circuit has made clear that if a contract is unambiguous, its proper construction should be determined as a matter of law. *See United States Naval Inst. v. Charter Communications*, 875 F.2d 1044, 1048 (2d Cir.1989).

B. *The Instant Motion can be Decided as a Matter of Law*

Chase has not contended that any provision of the Contract is ambiguous. Rather it urges this Court to accept that the Contract unambiguously creates certain obligations. KDI, in turn, argues that the Contract is clear and definite and that it articulates something entirely different. This Court finds that the Contract is, in fact, definite and precise, and consequently, the burden falls on this Court to construe the terms of the Contract. As was observed above, a contract is not made ambiguous simply because the parties urge different interpretations. Accordingly, it is the duty of this Court, on the instant motion, to interpret the Contract.

C. *Disputed Payments are not Deferred 12b–1 Collection Payments*

 The instant dispute can be easily summarized. KDI forwarded monies to the Funds. Although these Funds had no legal obligation to reimburse KDI, KDI had an expectation of repayment. Chase purchased this expectation. The Funds have made various payments to KDI. In dispute is the specific payments to which Chase is entitled.

Both parties acknowledge that if certain substantial payments were made by the Funds to KDI, then KDI was obligated to transfer, in turn, that money over to Chase. The parties vigorously dispute, however, whether KDI could keep certain other payments. In order to assess properly the con-

flicting positions of the two parties, this Court must engage in a meticulous analysis of the precise terms of the Contract.

The transfer and sale of KDI's rights to certain payments is effected by § 2.1 of the Contract, and the provisions of that section are explicated in other sections. The relevant provisions are the following:

> On the Closing Date, subject to all of the terms and conditions set forth in the Agreement ... KDI shall convey, assign sell and transfer to RFC, and RFC shall purchase from KDI, all of KDI's right, title and interest in and to the 12b–1 Collection Rights ...

Exhibit A to Motion to Dismiss and for Summary Judgement at § 2.1.

> *"12b–1 Collection Rights"* means KDI's rights to receive the Deferred 12b–1 Collection Payments when, as and if, such payments are authorized from time to time by the Disinterested Directors.
>
> *"Deferred 12b–1 Collection Payments"* means payments received by KDI from the Eligible Funds during the term of this Agreement to reimburse KDI for the Deferred 12b–1 Collection Amount.
>
> *"Deferred 12b–1 Collection Amount"* means the aggregate unreimbursed amount by which KDI's commissions and allowable expenses on the sale of shares of the Eligible Funds exceeded the aggregate Quarterly Maximum for each quarter or portion thereof during the period from and including June 1, 1983 through and including November 30, 1988, which amount shall not be less than $95,000,000.

Exhibit A to Motion to Dismiss and for Summary Judgement at §§ 1.1.7, 1.1.9, 1.1.10.

> All payments to be made under Articles III and IV of this Agreement shall be made from and only to the extent of the Deferred 12b–1 Collection Payments ...

Exhibit A to Motion to Dismiss and for Summary Judgement at § 3.1.3.

In sum, Chase purchased KDI's 12b–1 Collection Rights. These rights entitle Chase to receive the Deferred 12b–1 Collection Payments ("Collection Payments"). These payments are payments received to reimburse KDI for the Deferred 12b–1 Collection Amount (Collection Amount"), and that amount is the aggregate amount for which KDI was not reimbursed for the period from June 1, 1983 to November 30, 1988.

The principal question that needs to be resolved in the instant action is what properly counts as Collection Payments. At the time of this suit, three of the Funds had completely reimbursed KDI for the monies that KDI had transferred to them from June 1, 1983 to November 30, 1988. In fact, these Funds have paid more than was owed because they have made payments stemming from obligations that arose after November 30, 1988. The other six Funds, however, have not yet fully repaid the money that KDI furnished to them. Chase contends that the amount paid by the first three Funds, in excess of their obligations for the relevant period, should be applied to the deficiencies of the other six Funds. KDI argues that it is entitled to retain the excess and that such excess should not be applied to the shortfall of the other six Funds.

The crucial provision is section 1.1.9 of the Contract. That section provides that the Collection Payments are payments received by KDI *to reimburse* it for the Collection Amount. The Collection Amount is then defined in § 1.1.10, but that section merely designates an amount. It could just have easily indicated a dollar figure instead of providing a formula for the computation of the Collection Amount. The critical definition, therefore, is the one contained in section 1.1.9.

Section 1.1.9 specifically provides that the Collection Payments are payments to reimburse KDI for the Collection Amount. The issue in dispute, therefore, reduces to the determination of which payments received by KDI were for that purpose. Preliminarily, this Court must ascertain whether the designation of Fund payments as reimbursements for the Collection Amount is one made by the Funds themselves or by KDI.

The Contract clearly contemplates that such classification is to be done by KDI. In fact, the Contract constrains KDI to categorize certain payments made to it by the Funds as reimbursements for the Collection

Amount. *See* § 3.1.4 of the Contract. The Funds' categorization of their payments does not affect the arrangement entered into between KDI and Chase. In other words, the Contract compels KDI to consider certain payments as reimbursements, and the fact that they were not so considered by the Funds themselves is inconsequential.

KDI contends that the Collection Payments must be payments made to reimburse KDI for advances it made between June 1983 and November 1988. It further argues that once a Fund has fully reimbursed its advances for that period, any payments it makes to KDI are, by definition, not Collection Payments. Reply Memorandum in Support of Motion to Dismiss and for Summary Judgment ("Defendant Reply") at 4–5. Chase maintains that it is irrelevant whether an individual fund has fully repaid the money advanced to it by KDI. Instead, it argues, payments made to KDI by the Funds continue to be Collection Payments until the aggregate amount owed by all of the funds is repaid.

This Court finds KDI's position to be the correct one. Chase relies on the language in § 1.1.10 of the Contract that defines the Collection Amount to be the *aggregate* unreimbursed amount. This section, however, merely defines an amount. It is section § 1.1.9 that delimits Collection Payments, and this section clearly specifies that the payment must be one to reimburse. Payments made by a Fund that has fully repaid the advances made to it from June 1, 1983 to November 30, 1988, are not reimbursements subject to the Contract.

This Court does not find support in the Contract for Chase's contention that KDI is obligated to pay to Chase *all* 12b–1 fee income attributable to the Funds until the aggregate of KDI's advances to all the Funds have been repaid in full. Plaintiff Mem. at 7. Chase bases its argument on the fact that neither § 1.1.9 nor § 1.1.10 break down the unreimbursed amounts owed to KDI on a fund by fund basis. Plaintiff Mem. at 6. Consequently, Chase concludes that the 12b–1 fee income generated by the Funds must be treated in the aggregate, and that Chase

is entitled to all such payments until the aggregate amount is repaid.

Chase's argument is unavailing. Section 1.1.7 clearly specifies that Chase is only entitled to Deferred 12b–1 Collection Payments. It does not indicate that Chase is entitled to all 12b–1 payments. Chase can claim only those 12b–1 payments that arose from advances made between June 1983 and November 1988 and were deferred. Consequently, Chase is permitted to demand only those payments made to reimburse KDI for its earlier advances. Chase has no right to demand transfer of money paid by certain Funds to KDI for events that occurred after 1988. Monies paid by certain Funds in excess of their pre–1988 obligations are not "reimbursements" for the purposes of the Contract nor are they rendered reimbursements by the fact that other Funds have not satisfied their debts.

If the parties had wanted to grant to Chase the right to all 12b–1 payments made by the Funds until the entire obligation of every fund was satisfied, they could have done so. Such a contract provision could have been simply drafted. Instead, the parties painstakingly articulated limitations on Chase's entitlement. The Contract provides that Chase may only claim those payments made to reimburse KDI for the 1983–1988 advances. Chase presumably paid a reduced price for its acceptance of the risk that certain funds might not fully repay their obligations. This Court will not reallocate rights bargained for by sophisticated entities in an arms-length transaction simply because the risk of nonpayment, voluntarily shouldered by Chase, has developed into the actuality of nonpayment.

Certain arguments advanced by Chase should be individually addressed. Specifically, Chase contends that the use of the word "aggregate" in section 1.1.9 and sections 3.1.4 and 3.2, in their entirety, illustrate the correctness of its position. This Court has already noted why the use of the word "aggregate" is not dispositive. In sum, § 1.1.9 is called into play by § 1.1.10, and § 1.1.10 limits the ways that § 1.1.9 can be interpreted. Only those payments made "to reimburse" KDI for the Collection Amount are

Deferred 12b–1 Payments. In order to fall with the category of section 1.1.10 reimbursement, a payment must arise out of the advances made by KDI in the period between June 1983 and November 1988. Thus, Collection Payments do not encompass every Fund payment until the total amount paid by all Funds equals the aggregate amount that all funds owe; but rather, Collection Payments include only the aggregate amount paid to reimburse KDI for the 1983–1988 advances. Monies paid to reimburse KDI for debts that arose subsequent to 1988 are not to be considered Deferred 12b–1 Collection Payments merely because some Funds have not completely reimbursed KDI for the amounts advanced to them prior to 1988.

Section 3.1.4 states that if the sale of the shares of one or more of the Funds precludes such Fund or Funds from making payments which, if made, would reduce the Deferred 12b–1 Collection Amount and such sales create rights for KDI similar to 12b–1 Collection Rights, then any subsequent 12b–1 payments by such Fund or Funds to KDI, in excess of the amount owed by such Fund or Funds on current sales, will be deemed by KDI to be Deferred 12b–1 Collection Payments. Chase points out that this provision mandates that KDI deem all subsequent 12b–1 payments to be Collection Payments, regardless of whether or not they arose from pre–1988 KDI disbursements.

This provision, however, is specifically designed to address the situation where a Fund has taken actions that interfere with Chase's rights. Such situations are exceptional and require additional protections to safeguard Chase's interests. This section is such a safeguard. Section 3.1.4 does not inform sections 1.1.9 and 1.1.10, but instead, stands in contrast to them. The chief function of section 3.1.4 appears to be to obligate KDI to accord priority to the pre–1988 Collection Payments over repayment of post–1988 advances. The earlier sections provide Chase with rights only to those payments made to reimburse KDI for 1983–1988 advances. Section 3.1.4, in contrast, applies to situations where Chase's attempts to recover monies to which it is entitled might be frustrated due to actions taken by the Funds. In this situa-

tion, and this situation alone, Chase is granted the extraordinary remedy of recovery of all 12b–1 payments until the amount owed by the specific fund is fully repaid.

It should be noted that section 3.1.4 entitles Chase to all 12b–1 payments made by a Fund that falls within section 3.1.4's parameters, regardless of whether or not the payment was made for a pre–1988 advance. Chase's right to payment, however, still terminates when the Fund has fully repaid its individual debt. Section 3.1.4 nowhere permits Chase to demand payments made by a Fund in excess of that individual Fund's obligations. Consequently, even in the Section 3.1.4 Fund situation, KDI is not obligated to transfer all payments made by such a Fund to Chase until the aggregate Collection Amount is repaid.

Lastly, Chase contends that § 3.2 indicates the intent of §§ 1.1.9 and §§ 1.1.10. Section 3.2 provides that the rights granted to Chase revert back to KDI when the "aggregate" amount is repaid. Chase argues that the parties could have specified that Chase's rights to payments by individual Funds reverts back to KDI when the individual Funds fully reimburse KDI for their individual advances. This is true. Chase, however, then infers that it is necessarily the case that what the parties intended was to grant Chase an interest in all payments until the aggregate amount was repaid. This Court finds such an inference to be improper.

Section 3.2 merely indicates when the entire agreement between the parties is at an end and all rights transferred to Chase revert to KDI. Such a provision does not imply that certain rights cannot revert prior to the time at which all rights necessarily revert. In fact, the earlier provisions indicate that exactly such a situation was intended by the parties.

In sum, the Contract provides that Chase is only entitled to 12b–1 payments by the various Funds when such payments reimburse KDI for advances made by KDI from June 1, 1983 to November 30, 1988. Once an individual Fund has fully repaid KDI for such advances, future payments by that Fund are not to be applied to a shortfall in payments by other Funds. Accordingly,

KDI's motion for summary judgment with respect to Chase's contract claims must be granted.

### D. *Chase's Specific Charges*

#### 1. *Illegal Diversion of Payments*

■ Chase has alleged that, since the execution of the Contract, KDI has improperly deducted from Chase's income stream and taken for itself a 1% commission on sales of shares of the Funds. Plaintiff Mem. at 8. Chase contends that such actions violate the terms of the Contract. KDI correctly points out, however, that the commissions to which Chase refers are for sales that occurred subsequent to November 30, 1988. Consequently, such payments are not part of the Collection Payments in which Chase has an interest. They are not payments to reimburse 1983–1988 advances but rather commissions on post–1988 sales.

Chase asserts that section 3.1.4 precludes KDI from retaining the commissions on the post–1988 sales. As this Court has previously noted, however, section 3.1.4 only has application to Funds (1) which have not fully reimbursed their 1983–1988 advances, and (2) which receive post–1988 advances or take other actions that preclude them from making payments which, if made, would reduce the Collection Amount. Only in that limited instance is KDI required to deem all payments by that specific fund to be reimbursements of the 1983–1988 advances. Chase does not contend that KDI's retention of the commissions on the post–1988 sales is such a situation. Accordingly, KDI is entitled to summary judgment on this claim.

■ Chase further alleges that KDI has improperly diverted to itself nearly $2 million in deferred sales commissions paid by mutual fund customers upon redemption of their shares in the Funds ("CDSCs"). Plaintiff Mem. at 9. Chase notes that payment of CDSCs to the Funds increases their asset bases and thereby increases the 12b–1 fee income that is generated and which should benefit Chase. *Id.* Chase alleges that KDI represented that it would attempt to have CDSCs paid directly to Chase as a supplement to the 12b–1 income stream but that instead, KDI secured the payment of CDSCs directly to itself. Chase asserts that such action was taken in violation of the Contract.

This Court concludes that CDSCs were not contemplated by the Contract. To the extent that they arise post–1988, CDSCs are not Collection Payments and Chase has no interest in them. Again, Chase alleges that section 3.1.4 provides it with an interest in these post–1988 payments, and again this Court notes that section 3.1.4 does not provide Chase with rights to all post–1988 income but applies to a limited type of situation which Chase does not contend exists. Accordingly, KDI is entitled to summary judgment on this claim as well.[3]

#### 2. *Good Faith and Fair Dealing*

Chase alleges that KDI has also breached its implied covenant of good faith and fair dealing. Particularly, Chase contends that by systematically manipulating the sales of the Funds, KDI has dried up the stream of 12b–1 income that it is obligated to pay Chase and has taken steps to keep the income for itself. Plaintiff Mem. at 13. Chase further maintains that KDI has made repeated misrepresentations to Chase officers. *Id.*

■ "Under New York law, every contract contains an implied covenant of good faith and fair dealing," *Carvel Corp. v. Diversified Management Group, Inc.,* 930 F.2d 228, 230 (2d Cir.1991), which requires that no party to that contract can do anything which will destroy or injure the right of another party to receive the benefits of the contract. A party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations. *See Wertheim Schroeder,* 1993 WL 126427, at *4, 1993 U.S. Dist. LEXIS at *12.

---

**3.** The Court notes that to the extent that Chase's allegations give rise to a claim for misrepresentation, they will be addressed in sections D.2 and D.4 of this opinion. In this section, the Court only grants summary judgment to the extent that Chase asserts a breach of contract claim for KDI's actions with regard to the CDSCs.

KDI contends that the Contract sets forth the only restrictions that apply to the parties and that this Court should not create duties that are not in the Contract. This Court finds KDI's argument unconvincing. There exists a duty of good faith and fair dealing, and although Chase's breach of contract claim must be dismissed, Chase has asserted facts which, if true, would give rise to a violation of that duty. For example, if Chase can prove that KDI manipulated cash flows and fund sales and misrepresented the machinations to Chase, a trier of fact could conclude that KDI breached it duty to act in good faith even though there was no technical breach of the Contract. This Court cannot conclude, as a matter of law, on the instant motion, that no set of circumstances alleged by Chase would give rise to a breach of KDI's duty of good faith and fair dealing. Consequently, KDI's motion must be denied in this respect.

### 3. *Fiduciary Duty*

Chase also asserts that KDI has breached its fiduciary duty to Chase. Chase urges that KDI served a "myriad of discretionary functions and played a decisive role in managing sales of the [Funds]." Plaintiff Mem. at 18. Chase concludes that KDI's role resulted in its owing a fiduciary duty to Chase.

This Court concludes that the fact that KDI was, by contract, a servicing and collection agent did not make it a fiduciary to Chase. The Court notes that the parties to this action are sophisticated and engaged in an arm's length commercial transaction, and finds that no fiduciary relationship arose from that commercial transaction. Accordingly, KDI's motion for summary judgment dismissing the claim for breach of fiduciary duty must be granted.

### 4. *Fraud and Conversion*

Chase alleges that during the years after the execution of the Contract, KDI fraudulently manipulated the sales of the Funds and repeatedly made material misrepresentations to Chase. Plaintiff Mem. at 20. Chase contends that these acts give rise to a separate cause of action for fraud. It maintains that the misrepresentations were independent, fraudulent communications intended to deceive Chase and that Chase relied upon them to its detriment. *Id.* Chase bases its claim for a separate cause of action for fraud on the fact that the misrepresentations were independent of the breach of contract involved.

"If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort," such as a fraud claim. *Hargrave v. Oki Nursery, Inc.* 636 F.2d 897, 899 (2d Cir.1980). "[I]f in addition there is an interest in protecting the plaintiff from other kinds of harm, the plaintiff may recover in tort whether or not he has a valid claim for breach of contract." *Id.* at 899. Although this Court has found that Chase's breach of contract claims must be dismissed, it need not find that the fraud claims must also be dismissed. "[W]here a fraud claim seeks to enforce no more then [sic] the breached promises and obligations of a contract, rather than additional damages incurred as a result of the breach, the claims are merely redundant and must be dismissed." *R.H. Damon & Co. v. Softkey Software Products,* 811 F.Supp. 986, 992 (S.D.N.Y.1993).

As was the case in *R.H. Damon,* plaintiff here has made "no allegations that the alleged misrepresentations caused [it] any injury for which a breach of contract claim would not provide complete recovery." *Id.* The alleged fraudulent conduct was activity that purportedly breached the Contract, and the conduct was only of interest to Chase because it related to KDI's performance of its alleged contractual obligations. Even though conduct, standing by itself, might be sufficient to establish fraud, if it is only important to plaintiff because of the impact it had on the flow of income to which plaintiff was entitled under the Contract, it must be dismissed as redundant to the Contract claim. *See Vista Co. v. Columbia Pictures Industries, Inc.,* 725 F.Supp 1286, 1294 (S.D.N.Y.1989); *R.H. Damon & Co.,* 811 F.Supp. at 992. Accordingly, KDI's motion for dismissal of Chase's fraud claim must be granted.

Lastly, Chase asserts a cause of action for conversion. This Court, however, has already determined that there has been no violation of the Contract by KDI, nor was there any fiduciary relationship between KDI and Chase. Consequently, KDI has not exercised dominion over any property belonging to Chase. Accordingly, KDI's motion for dismissal of Chase's conversion claim must be granted.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment dismissing plaintiff's claims is granted with respect to each of plaintiff's claims except its claim for breach of the implied covenant of good faith and fair dealing. Specifically, the motion is denied only with respect to plaintiff's second cause of action. The parties are advised to appear in Courtroom 1106 for a pre-trial status conference at 2:00 p.m. on December 16, 1994.

**SO ORDERED.**