COURT OF CHANCERY
OF THE
STATE OF DELAWARE

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard L. Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: September 13, 2016
Date Decided: November 18, 2016

Leo John Ramunno, Esquire
5149 W. Woodmill Drive, Suite 20
Wilmington, De 19808

Eric J. Monzo, Esquire
Albert J. Carroll, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

RE:  *Charles J. Dalton, Jr. and Melissa Dalton v. Household Finance*
*Corp. II, et al.,* Civil Action No. 11972-VCMR

Dear Counsel:

This Letter Opinion addresses LSF9's and Caliber's motion to dismiss. For the reasons stated below, the motion is granted.

I.    BACKGROUND[1]

On August 24, 2007, Charles Dalton, Jr. and Melissa Dalton (the "Daltons") obtained a loan in the amount of $445,722.273 from Household Finance Corporation II ("Household Finance"), which was secured by a mortgage on their property. The Daltons requested a trial period plan that was approved by Household Finance on or about January 14, 2015. The trial period plan required that the Daltons make three installments of $4,100.79 by April 12, 2015, with a

---

[1]    All facts are taken from the complaint for the purposes of this motion.

potential reduction of the principal as a result ("Trial Period Plan Agreement").

The third payment, made on April 12, 2015, was not processed successfully. The

parties disagree about why this occurred. The Daltons allege that Household

Finance did not attempt a withdrawal from their bank account even though the

Daltons never cancelled the payment. Household Finance wrote a letter to the

Daltons on November 15, 2015, stating the amount was originally posted to their

account on April 13, 2015, but was returned on April 24, 2015, for insufficient

funds. That letter listed the wrong account number.

In or around November 2015, the Daltons' loan was sold to LSF9 Master

Participation Trust ("LSF9"), and on or around December 7, 2015, the servicing of

the Daltons' loan was transferred to Caliber Home Loans, Inc. ("Caliber"). On

February 9, 2016, the Daltons filed this action. On April 15, 2016, LSF9 and

Caliber filed their motion to dismiss. LSF9 and Caliber seek dismissal of the

action for the following reasons: (1) they were not parties to the original purported

agreement between the Daltons and Household Finance; (2) they were not parties

to the consent orders between Household Finance and the United States

Department of the Treasury; (3) the Daltons fail to state a claim for unjust

enrichment; and (4) the Daltons do not show a reasonable probability of success on

the merits in order for the court to issue an injunction. The Daltons filed their

opposition on June 24, 2016. On September 13, 2016, I heard oral argument on the motion.

## II.     ANALYSIS

In order to obtain a motion to dismiss, the defendant must prove "the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[2] This "reasonable conceivability" standard asks whether there is a "possibility" of recovery.[3] "A judge may consider documents outside of the pleadings only when: (1) the document is integral to a plaintiff's claim and incorporated in the complaint or (2) the document is not being relied upon to prove the truth of its contents."[4]

### A.     LSF9 and Caliber Are Not Parties Nor Successors in Interest to the Trial Period Plan Agreement

The Daltons assert claims against LSF9 and Caliber for alleged breaches of contract and breaches of the duty of good faith and fair dealing. The Daltons argue that LSF9 and Caliber should have successor liability for any breach of the Trial Period Plan Agreement because they were aware of the issue. Specifically, the

---

[2]     *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (footnote omitted).

[3]     *Id.* at 537 & n.13.

[4]     *Allen v. Encore Energy P'rs*, 72 A.3d 93, 96 n.2 (Del. 2013).

Daltons argue that LSF9 and Caliber were on notice of the loan modification because Household Finance was communicating with the Daltons after LSF9 became the owner of the loan and shortly before Caliber became the servicer. The Daltons further argue that LSF9 and Caliber breached the implied covenant of good faith and fair dealing because their conduct "destroy[ed] or injure[d] the right of another party to receive the benefits of the contract."[5] The Daltons argue that the "trial period would have been over with after the third payment and the loan modification would have occurred . [sic] Such a misrepresentation does impair the rights of the Daltons to receive the benefits conferred under the Mortgage."[6] The Daltons finally argue that LSF9's and Caliber's behavior is arbitrary and unreasonable because they knew or should have known that an issue existed with the mortgage. LSF9 and Caliber answer by stating that LSF9 and Caliber are not parties to the agreement and did not become the owner or servicer until seven months after the purported breach took place and eleven months after the Trial Period Plan Agreement was entered into by Household Finance and the Daltons.

---

[5] *Cent. Mortg. Co.*, 27 A.3d at 539 (quoting *Chase Manhattan Bank, N.A. v. Keystone Distribs. Inc.*, 873 F. Supp. 808, 815 (S.D.N.Y. 1994) (applying New York law)).

[6] Pls.' Answering Br. 7.

The Daltons' breach of contract claims fail. First, LSF9 and Caliber were not parties to the Trial Period Plan Agreement, which did not modify the loan document itself.[7] Second, LSF9 and Caliber are not successors in interest. In order to be a "'successor in interest,' a party must continue to retain the same rights as [the] original owner without [a] change in ownership and there must be change in form only and not in substance."[8] "[A] transferee is not a 'successor in interest.'"[9] LSF9 and Caliber purchased their rights to the mortgage; there was a "change in ownership"; and, they are not liable for the purported breach of contract that occurred before they purchased the mortgage. To the extent that the Daltons allege some breach of the covenant of good faith and fair dealing in relation to the mortgage itself, the Daltons' statements are conclusory and have not specifically alleged how LSF9 and Caliber impaired their rights to receive benefits under the mortgage agreement. Therefore, Counts III and V are dismissed.

---

[7] *Id.* at 6.

[8] *Patterson-Woods & Assocs., LLC v. Realty Enters., LLC*, 2008 WL 2231511, at *14 (Del. Super. May 21, 2008) (quoting BLACK'S LAW DICTIONARY 1431-32 (6th ed. 1990)); *see also Vituli v. Carrols Corp.*, 2015 WL 5157215, at *10 (Del. Super. May 1, 2015).

[9] *Id.*

**B.      LSF9 and Caliber Are Not Parties to the Consent Order**

The Daltons allege LSF9 and Caliber violated the consent orders that HSBC Bank USA, N.A., McLean Virginia entered with the U.S. Department of Treasury, Office of the Comptroller of the Currency, on or about June 16, 2015.[10]   The Daltons assert that a mortgage company cannot avoid the consent order by selling its interest, and LSF9 and Caliber took ownership of the note and mortgage subject to the consent order.   The Daltons do not adequately allege a violation of the consent order.   Moreover, the Daltons do not coherently articulate how LSF9 and Caliber are signatories or successors in interest to the consent orders, or how they are otherwise bound by the consent orders as "affiliates" of HSBC Bank USA, N.A.   Therefore, Count II is dismissed.

**C.      The Daltons Fail to State a Claim for Unjust Enrichment**

The Daltons assert that LSF9 and Caliber were unjustly enriched because two payments under the Trial Period Plan Agreement were retained, but the principal amount was not reduced.   To state a claim for unjust enrichment, the Daltons must prove "(1) an enrichment, (2) an impoverishment, (3) a relation

---

[10]      Compl. ¶ 23 (citing consent orders of Comptroller of the Currency in Civil Action Number AA-EC-11-14 and 2013-130); Transmittal Aff. oF Albert J. Carroll Exs. C, D.

between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[11]

The Daltons fail to allege an enrichment of LSF9 and Caliber because they do not allege that the two payments were not applied to their account. Under the Trial Period Plan Agreement, the reduction in principal would not have occurred until after the three payments were made. At any time before that, the original mortgage agreement governed, and the Daltons do not allege that LSF9 and Caliber did not comply with that agreement. Additionally, the Daltons do not attempt to demonstrate why they do not have an adequate remedy at law by suing Household Finance for damages of the alleged $93,143.40 in principal reduction. The Daltons do not assert any "reasonably conceivable"[12] set of facts to show a possibility of recovery under a claim for unjust enrichment from LSF9 and Caliber, and thus, Count IV is dismissed.

D.     **The Daltons Fail to Allege a Reasonable Probability of Success on the Merits or Imminent Threat of Irreparable Injury**

The Daltons request that the Court issue a preliminary and permanent injunction "enjoining LSF9 and Caliber from terminating the Plaintiff's [sic] loan

---

[11]     *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[12]     *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536-37 (Del. 2011) (footnote omitted).

modification entered on January 14, 2015."[13]  In order to obtain a preliminary injunction, the Daltons must "demonstrate (1) a reasonable probability of success on the merits at a final hearing; (2) an imminent threat of irreparable injury; and (3) a balance of the equities that tips in favor of issuance of the requested relief."[14] Similarly, in order to obtain a permanent injunction, the Daltons must demonstrate "(1) a reasonable probability of success on the merits; (2) that they will suffer irreparable injury without an injunction; and (3) that their harm without an injunction outweighs the harm to defendants that will result from the injunction."[15]

Because an injunction rests on the ability of the Daltons to bring claims against LSF9 and Caliber, and the other claims are dismissed, the Daltons cannot show a reasonable probability of success on the merits.  Furthermore, the Daltons have failed to show an "imminent threat of irreparable injury."  The Daltons concede that no foreclosure action by LSF9 and Caliber has been commenced or threatened; therefore, there currently is no threat to the Daltons' property, and the

---

[13]  Compl. ¶ 21.

[14]  *Concord Steel, Inc. v. Wilmington Steel Processing Co.*, 2008 WL 902406, at *3 (Del. Ch. Apr. 3, 2008); *Nutzz.com, LLC v. Vertrue, Inc.*, 2005 WL 1653974, at *6 (Del. Ch. July 6, 2005) (internal citations omitted).

[15]  *C&J Energy Servs., Inc. v. City of Miami Gen. Empl.'s & Sanitation Ret. Tr.*, 107 A.3d 1049, 1066 (Del. 2014).

claim is unripe for judicial review.[16]  If this perceived threat ever materializes, to the extent LSF9 and Caliber institute a legal action in the Delaware Superior Court, an entire process exists for the Daltons to protect themselves against that action for all the reasons they have given this Court.[17]

## III.    CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED as to all claims against LSF9 and Caliber.

**IT IS SO ORDERED.**

Sincerely,

*/s/Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp

---

[16]     Oral Arg. Tr. 9.

[17]     10 *Del. C.* §§ 5061-5067.